UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COUNTY OF MONTEREY DBA NATIVIDAD MEDICAL CENTER,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS OF CALIFORNIA DBA ANTHEM BLUE CROSS, et al.,<br><br>Defendants. | Case No. 17-CV-04260-LHK<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 58 |

Before the Court is a motion to dismiss filed by Defendants Blue Cross of California dba Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance Company (collectively, "Anthem") seeking to dismiss the sole claim in Plaintiff County of Monterey dba Natividad Medical Center's ("Natividad") first amended complaint ("FAC"). *See* ECF No. 58 ("Mot."). Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES Anthem's motion to dismiss the FAC.

**I.  BACKGROUND**

  **A. Factual Background**

Natividad is a 172-bed acute care hospital owned and operated by the County of Monterey.

1
Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

ECF No. 57 ("FAC") ¶ 3. On August 1, 2012, Anthem and Natividad entered into a Facility Agreement pursuant to which Natividad agreed to provide certain healthcare services to Anthem members and Anthem agreed to pay Natividad certain rates for those services. *Id.* ¶ 14.

The Facility Agreement governs not only claims for Anthem's insureds, but also services claims for members of "Other Payors" for whom Anthem provides claims processing services and to whom Anthem has sold, leased, transferred or conveyed its "Managed Care Network." *Id.* ¶ 14. Natividad alleges that these "Other Payors" include 32 ERISA Plans that Natividad has identified in its FAC. *Id.* ¶¶ 7, 15. The FAC alleges that these ERISA Plans entered into contracts with Anthem that required the ERISA Plans to comply with the terms of Anthem's contracts with providers in Anthem's Managed Care Network, including the Facility Agreement between Anthem and Natividad. *Id.* ¶ 18. Natividad also alleges that Anthem functions as the *de facto* plan administrator for the ERISA Plans because Anthem has, inter alia, (i) drafted and provided plan members with plan documents; (ii) operated a centralized verification and authorization telephone number which handled calls for members of the ERISA Plans; (iii) authorized Natividad to provide medical services to beneficiaries of the ERISA Plans; (iv) received and processed electronic bills from Natividad for claims for members of the ERISA Plans, including plans that are not named as defendants in the FAC; (v) communicated with Natividad on behalf of the ERISA Plans regarding authorization of surgical procedures; (vi) interpreted ERISA Plan language; (vii) issued remittance advices and EOBS; (viii) priced claims for the ERISA Plans; (ix) communicated with Natividad with respect to the processing of claims on behalf of the ERISA Plans; (x) processed appeals, and sent appeal response letters; and (xi) issued payment to Natividad. *Id.* ¶ 10.

At the time Natividad and Anthem entered into the Facility Agreement, Natividad did not have its certification to provide trauma services. *Id.* ¶ 19. Therefore, the parties did not agree upon trauma rates. *Id.* Instead, the Facility Agreement contemplated that the parties would negotiate new trauma rates once Natividad obtained its certification. *Id.* On January 5, 2015, Natividad received its certification to provide trauma services and began providing trauma services. *Id.* ¶ 21.

2

However, Natividad alleges that the parties' attempts to negotiate trauma rates after that date were unsuccessful. *Id.* ¶ 22. As a result, the FAC alleges that Anthem, on behalf of the ERISA Plans, has been improperly pricing trauma rates at the lower rates for emergency services in the Facility Agreement. *Id.* ¶¶ 22–24, 29–32. Specifically, the FAC alleges that "Natividad is informed and believes that Anthem has recommended and/or instructed the ERISA Plans to pay Natividad's trauma claims at the emergency services rates, and that the ERISA Plans are relying on and using Anthem's processing and pricing of the trauma claims at the emergency services rate to underpay the trauma claims." *Id.* ¶ 29. The FAC alleges that the difference between Natividad's billed charges and the amounts that the ERISA Plans are paying for the trauma claims exceeds $18 million. *Id.* In many cases, Anthem has held Natividad's claims submissions in limbo without allowing or denying the claims. *Id.* ¶ 30. By paying the claims at the emergency services rate, the FAC alleges that Natividad is informed and believes that Anthem has improperly interpreted the ERISA Plan documents. *Id.* ¶ 31.

Natividad alleges that it is an assignee of its patients' benefits under the ERISA Plans because "[a]s a condition of admission, every patient treated at Natividad signed an Assignment of Benefits form agreeing to, *inter alia*, assign his or her health insurance benefits to Natividad." *Id.* ¶ 25. The assignment of insurance benefits provision states as follows:

> I assign and authorize direct payment to the hospital of all insurance benefits payable for this hospitalization or for these outpatient services. I agree that the insurance company's payment to the hospital pursuant to this authorization shall discharge the insurance company's obligations to the extent of such payment. I understand that I am financially responsible for charges not paid according to this assignment.

*Id.* Natividad informed Anthem it was operating as an assignee of the patients in two ways. First, every claim submission to Anthem included a UB04 form, which indicates on Box 54 that the provider, Natividad, had an assignment of benefits from the member. *Id.* ¶ 26. Second, Natividad sent Anthem ERISA appeal letters which stated in the first paragraph: "With this appeal letter, we have included an Assignment of Benefits and Appointment of Authorized Representative from your Member to Natividad Medical Center." *Id.* ¶ 27.

3

Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

The FAC alleges that after receiving the improper emergency services rate for the trauma claims, Natividad would send Anthem two appeal letters. *Id.* ¶ 38. The first appeal letter was sent directly to Anthem. *Id.* The first appeal letter informed Anthem that the arbitrator had found Natividad is owed 80% of its billed charges for all trauma claims and requested that Anthem re-price and re-process the claims at 80% of billed charges. *Id.* The FAC alleges that Anthem either failed to respond to these first appeal letters or improperly denied them. *Id.* Natividad would then send a second appeal letter to Anthem, but the letter would note that the appeal was made pursuant to ERISA based on an assignment of benefits that Natividad received from each member. *Id.* The second appeal letter specifically asked Anthem, in all capital letters, bolded and underlined, to provide the hospital with the ERISA Plan document for the plan at issue. *Id.* Natividad did not receive any plan documents from Anthem and only rarely received responses from the ERISA Plans themselves. *Id.* Natividad never received a response setting forth the specific plan provisions on which the determination was based. *Id.*

In its capacity as an assignee of its patients' benefits, and based on the above described allegations, Natividad asserts one claim against Anthem for failure to pay plan benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶¶ 183–194. Specifically, Natividad "believes that ERISA Plans at issue in this case required Anthem and the ERISA Plans to pay Natividad customary and reasonable rates for the inpatient and outpatient trauma services that Natividad has provided to the ERISA Plan members." *Id.* ¶ 192.

Therefore, Natividad seeks compensatory damages and declaratory relief. *Id.* at 39. Specifically, Natividad seeks a declaration that it is "entitled to be paid a reasonable and customary amount for the trauma services it has provided, and is providing to the ERISA Plans," and that Anthem's "practice of pricing, processing, and paying Natividad's trauma claims at the emergency services rate in the Facility Agreement is improper." *Id.*

**B. Procedural History**

Natividad filed its initial complaint on July 27, 2017. *See* ECF No. 1. On November 11, 2017, the Court stayed the case pending the parties' arbitration, which concerned the issue of the

4

Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

reasonable value of trauma services Natividad provided to Anthem members. ECF No. 29; FAC ¶¶ 33–35. However, because the arbitration concerned only Anthem's fully-insured members, it did not encompass the ERISA Plan claims at issue in this litigation. FAC ¶ 34.

On August 10, 2018, the arbitrator issued the Final Arbitration award, which found that: (1) the parties did not agree that Natividad's claims were to be reimbursed at either the emergency services rate or Other Services rate; (2) having failed to agree on any rate to apply to Natividad's trauma services, the parties impliedly agreed that such services would be reimbursed at a reasonable value, which is fair market value; and (3) Natividad is awarded declaratory relief that the reasonable value of its trauma services provided to Anthem members is 80% of Natividad's billed charges. *Id.* ¶ 36. Anthem has since paid all trauma claims for its fully-insured members with dates of service through April 2018 at 80% of billed charges. *Id.* ¶ 37.

On October 8, 2018, Anthem filed a motion to dismiss the initial complaint. ECF No. 37. Natividad opposed on October 22, 2018. ECF No. 41. Anthem replied on October 29, 2018. ECF No. 42.

On January 24, 2019, at the initial case management conference, the Court lifted the stay and directed the Clerk to reopen the case file. ECF No. 50.

On January 28, 2019, the Court granted Anthem's motion to dismiss the initial complaint without prejudice. ECF No. 52 ("January 28, 2019 Order"). Specifically, the Court found that Natividad's complaint failed to plead factual allegations with specificity and that factual allegations were missing from the complaint, "including the specific claims, dates, explanations of benefits, and the ERISA Plan provisions at issue." *Id.* at 8. The Court further requested that "the parties meet and confer to assess whether claim numbers, patients numbers, or some other claim or patient identifiers could be used in public filings that would protect patient privacy, but enable the parties to identify the relevant claim or patient without sealing" and that "[u]sing such identifiers would minimize the sealing burdens on the parties and the Court in this case." *Id.* at 9. The Court also found that Natividad's complaint insufficiently alleged standing and that Natividad needed to allege the specific language of the assignment of benefits. *Id.* at 9–11. In its motion to dismiss

briefing, Natividad did not contest its failure and instead argued that it could "easily cure any deficiency by quoting the language of its assignment of benefits and/or attaching a sample assignment of benefits to any amended complaint." *Id.* at 11. Finally, the Court found that Natividad's complaint failed to sufficiently allege that Anthem is a *de facto* plan administrator because Natividad did not specifically identify the ERISA Plans or claims at issue, and thus "the related allegations about how Anthem controlled or managed these ERISA Plans [were] necessarily vague and conclusory." *Id.* at 11–13. The Court granted Natividad leave to amend to cure these deficiencies. *Id.* at 13–14.

On February 26, 2019, the Court granted the parties' stipulation to extend Natividad's deadline to file its FAC. ECF No. 54. The Court also explained that the number of claims and ERISA Plans that Natividad intended to add to the FAC would be unmanageable. *Id.* Thus, the Court required the parties to elect 10 claims—five chosen by Natividad and five chosen by Anthem—to be litigated through trial. *Id.*

On March 13, 2019, Natividad filed its FAC. *See* FAC. In its FAC, Natividad listed the 10 claims chosen by the parties, which included: (1) J.F. Reference #45 (Natividad Claim 1); (2) R.G. Reference #49 (Natividad Claim 2); (3) H.L. Reference #75 (Natividad Claim 3); (4) R.M. Reference #92 (Natividad Claim 4); (5) M.M. Reference #105 (Natividad Claim 5); (6) B.C. Reference #12 (Anthem Claim 1); (7) A.L. Reference #83 (Anthem Claim 2); (8) S.R. Reference #124 (Anthem Claim 3); (9) O.R. Reference #131 (Anthem Claim 4); and (10) J.R. Reference #136 (Anthem Claim 5). *Id.* ¶¶ 44–182.

On March 27, 2019, Anthem filed the instant motion to dismiss the FAC. *See* Mot. Anthem also filed a request for judicial notice in support of its motion. ECF No. 59 ("Anthem RJN"). On April 10, 2019, Natividad opposed. ECF No. 61 ("Opp'n"). Anthem replied on April 17, 2019. ECF No. 64 ("Reply"). On June 24, 2019, Natividad filed a motion for leave to file a sur-reply in opposition to Anthem's motion to dismiss the FAC. ECF No. 79 ("Sur-Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss

6

Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

7

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Anthem argues that Natividad's FAC should be dismissed for three reasons. First, Anthem argues that Natividad's ERISA claim fails because Natividad fails to allege sufficient facts to show that Anthem is a *de facto* plan administrator or otherwise a proper defendant. Second, Anthem argues that Natividad lacks derivative standing to pursue a claim under 29 U.S.C. § 1132(a)(1)(B) as a purported assignee of Natividad's patients' ERISA benefits. Third, Anthem argues that Natividad fails to allege facts sufficient to show that Natividad exhausted its administrative remedies as an ERISA claimant prior to bringing suit in federal court. The Court discusses each of Anthem's arguments in turn.

### A. *De Facto* Plan Administrator

Anthem argues that Natividad's ERISA claim fails because Natividad fails to allege sufficient facts to show that Anthem is a *de facto* plan administrator or otherwise a proper defendant. Mot. at 7–15; Reply at 3–6.

The Ninth Circuit has explained that "proper defendants under § 1132(a)(1)(B) for improper denial of benefits at least include ERISA plans, formally designated plan administrators, insurers or other entities responsible for payment of benefits, and *de facto plan administrators that improperly deny or cause improper denials of benefits*." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014), *cert denied, United Healthcare of Ariz., Inc.*, 136 S. Ct. 317 (2015) (emphasis added); *see also Cyr v. Reliance*

*Standard Life Ins. Co.*, 642 F.3d 1202, 1204, 1207 (9th Cir. 2011) ("[A]n entity other than the plan itself or the plan administrator may be sued under that statute in appropriate circumstances. . . . [T]he plan administrator can be an entity that has no authority to resolve benefit claims or any responsibility to pay them," and therefore, there may be other "logical defendant[s] for an action by [plaintiff] to recover benefits due to her under the terms of the plan and to enforce her rights under the terms of the plan, which is precisely the civil action authorized by § 1132(a)(1)(B)."). "Suits under § 1132(a)(1)(B) to recover benefits may be brought against the plan as an entity and against the fiduciary of the plan." *Spinedex*, 770 F.3d at 1297 (quotation marks, citation and emphasis omitted). A fiduciary of an ERISA plan is any entity that: (i) "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets;" (ii) "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has authority or responsibility to do so;" or (iii) "has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* at 1298; *see also* 29 U.S.C. § 1002(21)(A). The relevant question is whether the defendant "effectively controlled the decision whether to honor or to deny a claim." *Cyr*, 642 F.3d at 1204.

In the January 28, 2019 Order, the Court found insufficient Natividad's allegations in the initial complaint that Anthem acted as a *de facto* plan administrator because "Natividad's complaint does not identify the specific underlying claims and dates or other details related to those claims" and "[i]nstead, the complaint just broadly suggests that the ERISA Plans are relying on Anthem and are underpaying the trauma claims by pricing them at the emergency services rate." January 28, 2019 Order at 13. The Court held that "the complaint does not identify exactly which ERISA Plans are at issue" and that "because Natividad does not specifically identify the ERISA Plans or claims at issue, the related allegations about how Anthem controlled or managed these ERISA Plans are necessarily vague and conclusory." *Id.*

In the instant motion to dismiss the FAC, Anthem asserts that Natividad again fails to allege sufficient facts to support a claim against Anthem as a *de facto* plan administrator. Anthem

9

also asserts that the administrative service agreements between Anthem and several of the self-funded ERISA Plans that Anthem attaches in support of its motion to dismiss demonstrate that Anthem is not a *de facto* plan administrator. In opposition, Natividad asserts that its allegations are sufficient and challenges Anthem's reliance on the agreements. Natividad also filed a motion for leave to file a sur-reply and attached documents to support its allegations. The Court first discusses Natividad's allegations before briefly discussing the documents that the parties attached in support of their briefing for the instant motion.

### 1. Natividad's Complaint Sufficiently Alleges a *De Facto* Plan Administrator

The Court finds that Natividad's FAC sufficiently alleges that Anthem is a *de facto* administrator because Natividad alleges that Anthem effectively controlled or managed the decision of how much to reimburse Natividad. *Spinedex*, 770 F.3d at 1297; *Cyr*, 642 F.3d at 1204 (The relevant question is whether the defendant "effectively controlled the decision whether to honor or to deny a claim").

First, Natividad identifies the 32 ERISA Plans at issue, and alleges that Anthem functions as the *de facto* plan administrator for the 32 ERISA Plans at issue in the complaint. FAC ¶ 7. Specifically, Natividad alleges that Anthem controlled every aspect of the decision of whether and how much to pay Natividad for the trauma services that it provided to the ERISA Plan members because Anthem has, inter alia, (i) drafted and provided plan members with plan documents; (ii) operated a centralized verification and authorization telephone number which handled calls for members of the ERISA Plans; (iii) authorized Natividad to provide medical services to beneficiaries of the ERISA Plans; (iv) received and processed electronic bills from Natividad for claims for members of the ERISA Plans, including plans that are not named as defendants in the FAC; (v) communicated with Natividad on behalf of the ERISA Plans regarding authorization of surgical procedures; (vi) interpreted ERISA Plan language; (vii) issued remittance advices and EOBS; (viii) priced claims for the ERISA Plans; (ix) communicated with Natividad with respect to the processing of claims on behalf of the ERISA Plans; (x) processed appeals, and sent appeal response letters; and (xi) issued payment to Natividad. *Id.* ¶¶ 10, 13. These allegations support a

10
Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

finding that Anthem "effectively controlled the decision whether to honor or to deny a claim." *Cyr*, 642 F.3d at 1204.

In addition, as to the 10 selected claims at issue, Natividad alleges that Natividad only dealt with Anthem and not the named plan administrators. *Id.* ¶¶ 45–128. Natividad also alleges that Anthem effectively controlled the decision of how much to reimburse Natividad through either (1) pricing the claims at the emergency services rate in the Facility Agreement, *see* Natividad Claims 1, 3, 4, and 5 and Anthem Claims 1, 3, 4, and 5 (FAC ¶¶ 47, 81, 99, 115, 131, 150, 159, 176); or (2) paying no amount on the claims, *see* Natividad Claim 2 and Anthem Claim 2 (FAC ¶¶ 63, 143). Further, Natividad alleges that Anthem exercised control over Natividad's appeals and refused to provide Natividad with applicable plan documents, including the specific provisions of the ERISA Plans that constituted the reason for the adverse benefit determinations. *See* FAC ¶¶ 49–51, 60 (Natividad Claim 1); *id.* ¶¶ 66, 78 (Natividad Claim 2); *id.* ¶¶ 83–84, 96 (Natividad Claim 3); *id.* ¶¶ 100–102, 112 (Natividad Claim 4); *id.* ¶¶ 117–119, 128 (Natividad Claim 5); *id.* ¶¶ 133, 140 (Anthem Claim 1); *id.* ¶¶ 145, 147 (Anthem Claim 2); *id.* ¶¶ 152–154, 156 (Anthem Claim 3); *id.* ¶¶ 161–163 (Anthem Claim 4); *id.* ¶¶ 178–180, 182 (Anthem Claim 5). These allegations also support a finding that Anthem "effectively controlled the decision whether to honor or to deny a claim." *Cyr*, 642 F.3d at 1204.

In sum, the Court finds that Natividad's FAC sufficiently alleges that Anthem is a *de facto* administrator because Natividad alleges that Anthem effectively controlled or managed the decision of how much to reimburse Natividad. *Spinedex*, 770 F.3d at 1297; *Cyr*, 642 F.3d at 1204 (The relevant question is whether the defendant "effectively controlled the decision whether to honor or to deny a claim").

**2. The Attached Documents Do Not Undermine Natividad's Allegations**

In the instant motion to dismiss briefing, the parties effectively attempt to convert the motion to dismiss to a motion for summary judgment because both parties attach documents to prove Anthem's *de facto* plan administrator status, or lack thereof. The Court finds the instant motion to dismiss an improper vehicle for analyzing these documents. *See, e.g.*, *Cusack-Acocella*

11
Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

*v. Dual Diagnosis Treatment Ctr., Inc.*, 2018 WL 6219999, at *3 (C.D. Cal. Sept. 10, 2018) (noting that "the Ninth Circuit expressed strong disfavor for defendants using judicial notice and other related doctrines to inject non-pleading documents into the motion to dismiss analysis." (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir., 2018) (noting the "concerning pattern" of parties "exploiting" judicial notice and incorporation by reference "to defeat what would otherwise constitute adequately stated claims at the pleading stage")). Nonetheless, the Court briefly discusses the documents because the Court believes it demonstrates why Natividad's allegations are sufficient at the motion to dismiss stage.

First, in support of its motion to dismiss, Anthem filed a request for judicial notice asking that the Court take judicial notice of nine administrative service agreements between Anthem and several of the self-funded ERISA Plans. *See* Anthem RJN. Anthem cites these agreements to support the argument that Anthem is not the ERISA Plan itself nor the plan administrator for the self-funded plans. *See* Mot. at 7–11 ("Indeed, Anthem's agreements with the self-funded ERISA Plans make clear that the self-funding employer groups (defined either as the "Trust" or the "Fund") are the "plan administrators," "plan sponsor," and/or "named fiduciary.").

The Court DENIES AS MOOT Anthem's request for judicial notice. As an initial matter, there is reason to question the authenticity of these agreements. Although Anthem has attached the agreements to the declaration of Randy Hendel, the Senior Legal Specialist in the Legal Department for Anthem, Inc., the agreements in Exhibits A, B, C, D, F, and H are unexecuted. *See also* Hendel Decl. ¶ 2 (explaining that the agreements are copies of contracts that do not bear signatures). Moreover, several of the agreements are incomplete. For example, Exhibit I references an "Attachment A," but Anthem did not include Attachment A. Similarly, Exhibits A, B, C, D, E, F, & H reference a "Schedule A," but Anthem did not include Schedule A of any of the agreements. The agreements make clear that Schedule A defines the agreement period and the "Claims payment method," among other unknown terms. Without knowing the agreement period, it is unclear whether the agreements were operative during the time in which members received treatment at Natividad. Similarly, the "Claims payment method" would clarify the discretion given

12

to Anthem by the ERISA Plans to determine plan benefits.

Nonetheless, even if the Court considers the agreements, the agreements do not undermine Natividad's allegations. Although the agreements show that Anthem is not the formally designated administrator of the ERISA Plans, Natividad never asserted that Anthem was the formally designated administrator of the ERISA Plans. Natividad alleges that Anthem is a *de facto* administrator, which is a proper defendant, even in the face of a formally designated plan administrator. For instance, in *Cyr*, CTI was the formally designated plan administrator, not Reliance, but CTI had nothing to do with denying Cyr's claim for increased benefits. *Cyr*, 642 F.3d at 1207. The Ninth Circuit held that Reliance was a proper defendant because Reliance acted as the *de facto* plan administrator when Reliance denied Cyr's request for increased benefits. *Id.* ("We conclude, therefore, that potential liability under 29 U.S.C. § 1132(a)(1)(B) is not limited to a benefits plan or the plan administrator. Reliance is a proper defendant in a lawsuit brought by Cyr under that statute."). Similarly, here, it is no matter that Anthem is not the formally designated plan administrator so long as Anthem acted as the *de facto* plan administrator.

Moreover, the language Anthem cites in the agreements does not foreclose a finding that Anthem exercises discretion or control because the agreements also specifically state that Anthem has been delegated discretionary authority and responsibility. For instance, the Western Growers agreement states that the ERISA Plan retains all discretionary authority except as delegated to Anthem pursuant to Article 2(k). Ex. A at 6. Article 2(k) gives Anthem authority to conduct medical necessity review, utilization review, and case management. Article 2(k) also "delegates to Anthem fiduciary authority to determine appeals of any adverse benefit determination made by Anthem." *Id.* at 4–5. Similarly, the PG&E agreement authorizes Anthem to "determine entitlement for Plan benefits" and provides that Anthem will disburse funds in the amount Anthem "determines to be proper under the Plan and/or this Agreement." Ex. I at 7, 8.

In addition, Natividad filed a motion for leave to file a sur-reply. The Court acknowledges that Natividad's proposed sur-reply casts doubts on the authenticity of the agreements Anthem submitted in support of the instant motion to dismiss. For example, Natividad's proposed sur-reply

13
Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

attaches a redlined version of the administrative services agreement between Western Growers and Anthem that contradicts the unexecuted and incomplete agreements that Anthem submitted. Tooch Decl., Exs. 2 & 3. Nonetheless, sur-replies are disfavored, and because the Court denied as moot Anthem's request for judicial notice, the Court also DENIES Natividad's motion for leave to file a sur-reply.

In sum, the Court finds that Natividad's FAC sufficiently alleges that Anthem is a *de facto* administrator because Natividad alleges that Anthem effectively controlled or managed the decision of how much to reimburse Natividad. *Spinedex*, 770 F.3d at 1297; *Cyr*, 642 F.3d at 1204 (The relevant question is whether the defendant "effectively controlled the decision whether to honor or to deny a claim"). Thus, the Court denies Anthem's motion to dismiss on this ground.

**B. Standing**

Anthem argues second that Natividad's complaint should be dismissed for inadequately pleading that Natividad has standing to pursue its ERISA claim. Mot. at 15–19; Reply at 6–9.

ERISA provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). The Ninth Circuit has held that healthcare providers are not "beneficiar[ies]" for ERISA purposes. *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 875 (9th Cir. 2017). Healthcare providers therefore do not have direct authority as beneficiaries to sue under ERISA "to recover payments due them for services rendered, or otherwise to enforce the statute's protections." *Id.* Thus, Natividad, a medical and healthcare services provider, is not a participant or a beneficiary that is authorized to sue under ERISA.

However, "ERISA does not forbid *assignment* by a beneficiary of his right to reimbursement under a health care plan to the health care provider." *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986) (per curiam) (emphasis added); *see also Spinedex*, 770 F.3d at 1289 ("As a non-participant health care provider, Spinedex cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients'

14

assignments of their benefits claims."); *DB Healthcare*, 852 F.3d at 875 (reiterating rule that health care providers must bring ERISA claims derivatively by relying on its patients' assignments of their benefits claims). Relying on the above legal authority, Natividad alleges that it has standing to pursue this action derivatively as an assignee of its patients' ERISA benefits. FAC ¶ 185. Specifically, Natividad alleges that "[a]s a condition of admission, every patient treated at Natividad signed an Assignment of Benefits form agreeing to, inter alia, assign his or her health insurance benefits to Natividad." *Id.*

In the January 28, 2019 Order, the Court found insufficient Natividad's allegation that Natividad had standing as an assignee of its patients' benefits. January 28, 2019 Order at 10. The Court stated that, "at bare minimum, Natividad should allege the specific language of the assignment itself" and that in the initial complaint "Natividad neither quotes from the operative assignment language nor does Natividad attach to the complaint a copy of any agreement containing the alleged assignment." *Id.* at 10–11. Moreover, in the first motion to dismiss briefing, Natividad did not contest its failure and instead argued that it could "easily cure any deficiency by quoting the language of its assignment of benefits and/or attaching a sample assignment of benefits to any amended complaint." *Id.* at 11.

In the instant motion to dismiss the FAC, Anthem asserts that Natividad again fails to adequately plead that Natividad has standing to pursue its ERISA claim. Specifically, Anthem argues first that Natividad failed to submit with its amended pleading the "Assignment of Benefits" form associated with the 10 selected claims at issue. Anthem argues second that the agreements between Anthem and several of the self-funded ERISA Plans that Anthem attaches in support of its motion to dismiss demonstrate that Natividad does not have standing because the agreements contain anti-assignment clauses. In opposition, Natividad asserts that its allegations regarding the assignment are now sufficient and challenges Anthem's reliance on the agreements. The court discusses both disagreements in turn.

First, the Court finds that Natividad has cured the standing deficiencies of its initial complaint because Natividad has alleged the specific language of the assignment of benefits.

15
Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

Specifically, Natividad's FAC alleges that "[a]s a condition of admission, every patient treated at Natividad signed an Assignment of Benefits form agreeing to, *inter alia*, assign his or her health insurance benefits to Natividad." FAC ¶ 25. The assignment of insurance benefits provision states as follows:

> I assign and authorize direct payment to the hospital of all insurance benefits payable for this hospitalization or for these outpatient services. I agree that the insurance company's payment to the hospital pursuant to this authorization shall discharge the insurance company's obligations to the extent of such payment. I understand that I am financially responsible for charges not paid according to this assignment.

*Id.* Thus, under Ninth Circuit law, Natividad has sufficiently alleged standing because Natividad has alleged a valid assignment of benefits. *See Misic*, 789 F.2d at 1377 ("[A] valid assignment confers upon the assignee standing to sue in place of the assignor."); *DB Healthcare*, 852 F.3d at 875 (reiterating rule that health care providers must bring ERISA claims derivatively by relying on its patients' assignments of their benefits claims). Moreover, "[a]n assignment of the right to payment [of ERISA benefits] logically entails the right to sue for non-payment." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015); *Misic*, 789 F.2d at 1379 ("We conclude Dr. Misic, as assignee of beneficiaries pursuant to assignments valid under ERISA, has standing to assert the claims of his assignor.").

It is of no matter, as Anthem suggests, that Natividad quoted the language instead of attaching the actual form. The case that Anthem cites, *Creative Care, Inc. v. Conn. Gen. Life Ins. Co.*, found the plaintiff's complaint insufficient because it neither "quote[d] from the purpose assignment's language" *nor* "attach[ed] a copy of any agreement containing the alleged assignment." 2017 WL 5635015, *3 (C.D. Cal. July 5, 2017). Here, Natividad has sufficiently quoted from the assignment language. *See also Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017) ("[A] plaintiff may include in its complaint the particular language of the assignment or 'include the assignment of benefit document itself.'"). Moreover, Natividad has linked the assignment language to the 10 selected claims at issue because Natividad's FAC alleges that "[a]s a condition of admission, *every patient*

16
Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

*treated at Natividad signed an Assignment of Benefits* form agreement to, *inter alia*, assign his or her health insurance benefits to Natividad." FAC ¶ 25.

Second, Anthem again references the administrative service agreements between Anthem and several of the self-funded ERISA Plans, this time to argue that the agreements contain anti-assignment clauses that defeat the assignment of benefits. The Court rejects Anthem's arguments. As previously discussed, the agreements are suspect because they are incomplete and unexecuted. Moreover, the agreements do not defeat the assignment of benefits. The Ninth Circuit has previously held that anti-assignment clauses in "[t]he governing *employee benefit plans*" override any purported assignments. *DB Healthcare*, 852 F.3d at 876 (emphasis added); *see also Spinedex*, 770 F.3d at 1296 (stating that anti-assignment clauses in ERISA plans are valid and enforceable). Moreover, Anthem does not cite to any plan documents containing an anti-assignment clause; Anthem only cites administrative service agreements, which are not the plan documents.

In sum, the Court finds that Natividad has sufficiently alleged an assignment of benefits and thus has sufficiently plead that Natividad has standing to pursue its ERISA claim. Therefore, the Court denies Anthem's motion to dismiss on this ground.

### C. Exhaustion of Administrative Remedies

Finally, Anthem argues that Natividad fails to allege facts sufficient to show that Natividad exhausted its administrative remedies as an ERISA claimant prior to bringing suit in federal court. Mot. at 19–21; Reply at 9–11. The Court did not previously consider this argument in the January 28, 2019 Order because the Court found that Anthem had waived this argument by raising it for the first time in its reply brief. January 28, 2019 Order at 7 n.1.

"As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Spinedex*, 770 F.3d at 1298 (quoting *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011)). "[F]ederal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so." *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980); *Diaz v. United Agr. Employee Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995)

17

("Although not explicitly set out in the statute, the exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise.").

In the instant motion to dismiss the FAC, Anthem asserts that Natividad failed to allege facts sufficient to show that Natividad exhausted its administrative remedies as an ERISA claimant prior to bringing suit in federal court. Specifically, Anthem argues first that Natividad failed to allege exhaustion and second that Natividad's allegations that Natividad is subject to the "futility" exception to the exhaustion requirement are insufficient. Natividad responds that Natividad properly alleged exhaustion by asserting that Anthem failed to comply with mandatory ERISA regulations at issue and that, in the alternative, Natividad alleged futility. Below, the Court finds that Natividad has sufficiently pled exhaustion. Thus, the Court need not consider the parties' arguments regarding futility.

First, as to the 10 selected claims at issue, Natividad alleges that Anthem failed to comply with mandatory ERISA regulations in issuing the adverse benefit determinations, which would render any applicable administrative remedies exhausted. Specifically, for each of the 10 selected claims at issue, Natividad alleges that Anthem issued an explanation of benefits that failed to comply with 29 C.F.R. § 2560.503-1(g)(i, ii), which requires Anthem to state "[t]he specific reason or reasons for the adverse determination" as well as "[r]eference to the specific plan provisions on which the determination is based." *See, e.g.,* FAC ¶ 60 (alleging that as to Natividad Claim 1, Anthem failed to provide the specific reason or reasons for the adverse determination and reference to the specific plan provisions on which the determination is based); *id.* ¶ 78 (alleging the same as to Natividad Claim 2); *id.* ¶ 96 (alleging the same as to Natividad Claim 3); *id.* ¶ 112 (alleging the same as to Natividad Claim 4); *id.* ¶ 128 (alleging the same as to Natividad Claim 5); *id.* ¶ 140 (alleging the same as to Anthem Claim 1); *id.* ¶ 147 (alleging the same as to Anthem Claim 2); *id.* ¶ 156 (alleging the same as to Anthem Claim 3); *id.* ¶ 173 (alleging the same as to

18

Case No. 17-CV-04260-LHK
ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT

Anthem Claim 4); *id.* ¶ 182 (alleging the same as to Anthem Claim 5). ERISA regulations provide that "in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant *shall be deemed to have exhausted the administrative remedies* available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(1) (emphasis added). Accordingly, because Natividad alleges that Anthem failed to comply with 29 C.F.R. § 2560.503-1(g)(i, ii) as to the 10 selected claims at issue, Natividad sufficiently alleges exhaustion based on Anthem's failure to comply with 29 C.F.R. § 2560.503-1(1).

Anthem argues in reply that Natividad's argument is insufficient because the FAC also alleges that for some of the claims in the case, Anthem's explanation of benefits provided the claim would not be properly paid because the "CHARGES EXCEED CONTRACT AGREEMENT." Reply at 9 (citing FAC ¶ 189). However, this explanation of benefits is not alleged to apply to the 10 selected claims currently at issue. *See* FAC. As already discussed, Natividad's allegations as to the 10 selected claims at issue are sufficient. Moreover, Natividad's allegations as to this explanation of benefits asserts that the explanation of benefits is not specific enough to meet the requirements of 29 C.F.R. § 2560.503-1(g)(i, ii), which requires Anthem to state "[t]he specific reason or reasons for the adverse determination" as well as "[r]eference to the specific plan provisions on which the determination is based." Indeed, Natividad further alleges that because of this failure, Natividad shall, pursuant to 29 C.F.R. § 2560.503-1(1), "be deemed to have exhausted the administrative remedies under the plan." *See* FAC ¶ 190. These allegations are sufficient at the motion to dismiss stage. *See Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In sum, the Court finds that Natividad has sufficiently alleged exhaustion. Therefore, the Court denies Anthem's motion to dismiss on this ground.

**IV. CONCLUSION**

19

For the foregoing reasons, the Court DENIES Anthem's motion to dismiss the FAC.

**IT IS SO ORDERED.**

Dated: July 18, 2019

*Lucy H. Koh*
LUCY H. KOH
United States District Judge