DARON L. TOOCH (SBN 137269)
dtooch@kslaw.com
ARIANA E. FULLER (SBN 301797)
afuller@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
T:  +1 213 443 4355
F:  +1 213 443 4310

Attorneys for Plaintiff County of Monterey dba
Natividad Medical Center

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **COUNTY OF MONTEREY dba NATIVIDAD MEDICAL CENTER,**<br><br>Plaintiff,<br><br>v.<br><br>**BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS, ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, and DOES 1 - 50, inclusive,**<br><br>Defendants. | Case No. 5:17-cv-04260-LHK<br><br>Hon. Lucy H. Koh<br><br>**MOTION TO STRIKE THE EXPERT DESIGNATION, REPORT, AND OPINION OF RANDALL J. MOON**<br><br>Date: March 5, 2020<br>Time: 1:30 p.m.<br><br>Filed: July 27, 2017<br>Hearing: March 16, 2020 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 5, 2020 at 1:30 p.m. or as soon thereafter as counsel may be heard, before the Honorable Lucy H. Koh, United States District Judge, in Courtroom 8 of the above-entitled Court located at 280 South 1st Street, San Jose, CA 95113, Plaintiff County of Monterey d/b/a Natividad Medical Center ("Natividad") will and hereby does move the Court for an order striking the designation, report, and testimony of Randall J. Moon, the expert for defendants Blue Cross of California dba Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance Company (collectively, "Anthem") (with Natividad, "Parties").

This Motion is made pursuant to Federal Rule of Evidence 702 because Moon's methods and testimony do not comport with the legal requirements of an expert witness. Specifically:

1. Mr. Moon is not qualified as an expert witness on the issues presented in this case;
2. Mr. Moon used an incorrect, self-created standard utterly lacking in scientific foundation to arrive at his opinions, and this standard is contrary to controlling legal authority;
3. Mr. Moon purports to testify on questions of law, which is improper from an "expert"; and
4. Mr. Moon admits that Anthem's improper pricing of claims would cause the ERISA plans to pay the claims incorrectly; thus, his opinion as to whether Anthem is a *de facto* fiduciary is irrelevant.

This Motion is supported by this notice and accompanying motion, the memorandum of points and authorities, the Declaration of Daron L. Tooch and exhibits in support thereof, the pleadings and papers on file in this action, and such other argument and evidence as may be presented at or before the hearing of this matter.

DATED: November 1, 2019

**KING & SPALDING LLP**

By: _____
Daron L. Tooch
Ariana E. Fuller
Attorneys for Plaintiff COUNTY OF MONTEREY dba NATIVIDAD MEDICAL CENTER

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 2

III. ARGUMENT ................................................................................................................... 3

    A. Moon Is Not Qualified as an Expert Witness on the Issues in this Case. ................ 3

    B. Moon Used No Established Standard in Arriving at His Opinions ......................... 5

        1. Moon's Self-Created Standard Regarding ERISA Fiduciaries Lacks Foundation ............ 6

        2. Moon's Speculations on Ramifications of the Court's Ruling Against Anthem Are Pure Conjecture ............................................................................................... 10

    C. The Court Should Exclude Moon's Improper Legal Opinions ............................... 11

        1. Whether a Defendant Is a "Fiduciary" Under ERISA Is a Legal Opinion ....................... 11

        2. Moon's Opinion Regarding Contract Interpretation Is a Legal Opinion ......................... 12

        3. Opinion on Ramifications of the Court's Decision Against Anthem Is a Legal Opinion ................................................................................................. 13

    D. Mr. Moon Admits that Anthem's Actions Could Have Caused the ERISA Plans to Pay Claims Improperly .................................................................................... 13

IV. CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bammerlin v. Navistar Int'l Transp. Corp.*,
    30 F.3d 898 (7th Cir.1994) ............................................................................................. 11

*Beech Aircraft Corp. v. United States*,
    51 F.3d 834 (9th Cir. 1995) .............................................................................................. 3

*Bldg. Indus. Assn of Wash. v. Wash. State Bldg. Code Council*,
    683 F.3d 1144 (9th Cir. 2012) .......................................................................................... 2

*In re Bos*,
    2012 WL 8250010 (E.D. Cal. 2012) ................................................................................ 9

*Brighton Collectibles, Inc. v. Renaissance Group Int'l*,
    No. CV 06-1115 H (POR), 2008 WL 5500659 (S.D. Cal. May 13, 2008) ..................... 3

*Cabrera v. Cordis Corp.*,
    134 F.3d 1418 (9th Cir. 1998) ................................................................................ 5, 6, 11

*CFM Communications, LLC v. Mitts Telecasting Co.*,
    424 F.Supp.2d 1229 (E.D. Cal. 2005) ......................................................................... 3, 11

*Crow Tribe of Indians v. Racicot*,
    87 F.3d 1039 (9th Cir. 1996) ...................................................................................... 11, 12

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579 (1993) ............................................................................................. 3, 5, 6, 7

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
    777 F.Supp.2d 869 (E.D.Penn. 2011) .............................................................................. 9

*In re Eshelman*,
    No. ADV 10-02473-A, 2012 WL 8244602 (Bankr. E.D. Cal. Nov. 5, 2012) ................. 8

*G. Hawaii, Dep't of Human Servs.*,
    703 F. Supp. 2d 1112 (D. Haw. 2010) ............................................................................. 7

*Gifford v. CALCO, Inc.*,
    2005 WL 283524 (D. Ala. 2005) ..................................................................................... 9

*Guyan Intern., Inc. v. Professional Benefits Adm'rs, Inc.*,
    689 F.3d 793 (6th Cir. 2012) ........................................................................................... 8

*Hamilton v. Carell*,
    243 F.3d 992 (6th Cir. 2001) ........................................................................................... 12

*Harris v. Amgen, Inc.*,
    788 F.3d 916 (9th Cir. 2015) ........................................................................................... 12

*IT Corp. v. General American Life Ins. Co.*,
    107 F.3d 1415 (9th Cir. 1997) ...................................................................................... 8, 9

*Lewert v. Boiron, Inc.*,
  212 F.Supp.3d 917, 924 (C.D. Cal. 2016) ......................................................................................3

*Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*,
  89 F.3d 594 (9th Cir. 1996) ............................................................................................... 5, 6, 10

*Marx & Co., Inc. v. Diners' Club, Inc.*,
  550 F.2d 505 (2d Cir. 1977) .........................................................................................................11

*Nationwide Transport Finance v. Cass Information Systems, Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ....................................................................................................11

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) .......................................................................................................................8

*Rountree v. Ching Feng Blinds Indus. Co.*,
  No. 3:04 CV 112 JWS, 2008 WL 7811566 (D. Alaska June 17, 2008) .............................13

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
  770 F.3d 1282 (9th Cir. 2014) .......................................................................................... 1, 2, 13

*Srein v. Frankford Trust Co.*,
  323 F.3d 214 (3d Cir. 2003) .......................................................................................................12

*Starbucks Corp. v. Lundberg*,
  No. CV 02-948 HA, 2005 WL 6036699 (D. Or. May 25, 2005) .........................................3

*TC Systems Inc. v. Town of Colonie*,
  213 F.Supp.2d 171 (N.D.N.Y.2002) ..........................................................................................12

*United States v. Chang*,
  207 F.3d 1169 (9th Cir. 2000) ......................................................................................................3

*United States v. S. Ind. Gas & Elec. Co.*,
  55 Env't Rep. Cas. (BNA) 1597, 2002 WL 31427523, 2002 U.S. Dist. LEXIS 20936
  (S.D.Ind. Oct. 24, 2002) ...............................................................................................................12

**Federal Statutes**

29 U.S.C. § 1002(21)(A) ........................................................................................................... 6, 7

Clean Air Act ......................................................................................................................................12

Employee Retirement Income Security Act of 1974 ........................................................... *passim*

**Rules**

Fed. R. Evid. 104(a) ............................................................................................................................3

Fed. R. Evid. 702 ....................................................................................................................... 2, 3, 5, 6

Fed. R. Evid. 702(a) ............................................................................................................................3

Fed. R. Evid. 702(c) ............................................................................................................................5

Fed. R. Evid. 702(d) ............................................................................................................................5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Natividad brings this case against Anthem on the grounds that it is a proper defendant under ERISA in that it is either a named fiduciary, or an insurer or other entity that improperly denied or caused the denial of ERISA benefits. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014), *cert denied*, *United Healthcare of Ariz., Inc.*, 136 S. Ct. 317 (2015) ("[P]roper defendants under § 1132(a)(1)(B) for improper denial of benefits at least include [i] ERISA plans, [ii] formally designated plan administrators, [iii] insurers or other entities responsible for payment of benefits, and [iv] de facto plan administrators that improperly deny or cause improper denial of benefits").

Anthem has designated Randall J. Moon as a purported expert to opine that Anthem was neither a named fiduciary nor a "*de facto*" fiduciary in connection with its actions in this case. (Declaration of Daron L. Tooch ("Tooch Decl."), ¶ 3, Exhibit ("Exh.") 1, Expert Report of Randall J. Moon ("Report"), p. 22.)  In addition to an expert report and deposition testimony, Anthem submitted a declaration from Mr. Moon in support of its motion for summary judgment. (*See id.*, ¶ 16, Exh. 14, Declaration of Randall J. Moon ("Moon Decl."); *see also* Dkt. 93.)  Anthem's motion for summary judgment relies heavily on Mr. Moon's Report and declaration.

Natividad moves to strike and exclude the report, opinions, declaration, and any other testimony of Mr. Moon on the following grounds:

1. Mr. Moon is not an expert regarding ERISA fiduciaries in connection with payment of healthcare claims.  Mr. Moon has no experience in this area.  All of his experience has been in connection with *investments* for ERISA plans, mostly outside of the United States—not the administration of claims for medical benefits.  He admits he has no knowledge or experience regarding healthcare claims.
2. Mr. Moon used no established standard for determining who qualifies as a fiduciary under ERISA.  He did not consider the definition of a fiduciary in the statute, nor did he review applicable case law.  He simply created his own standard.

3. Mr. Moon's opinion about the "ramifications" of the Court's ruling against Anthem is pure conjecture.

4. Mr. Moon's opinions are legal opinions. His opinion that Anthem was not a named fiduciary is based solely on his reading of the Administrative Services Agreements ("ASAs") between Anthem and the ERISA plans. His opinion that Anthem was not a *de facto* fiduciary is based solely on his opinion that Anthem's actions in pricing the claims on behalf the ERISA plans did not make it a *de facto* fiduciary. He offers no special expertise or insight on these issues, and the Court can make these legal rulings without the benefit of Mr. Moon's opinion. Mr. Moon's "explanations" of "the practical implications associated with determination that an entity like Anthem…acted as a *de facto* fiduciary…in this case and thereby became liable" (Moon Decl. at ¶ 3) are also legal opinion, based on pure conjecture.

5. Mr. Moon admits that Anthem's improper pricing would cause the ERISA plans to improperly pay the claims. His opinion that Natividad is not a *de facto* fiduciary is irrelevant, because under applicable Ninth Circuit case law, Anthem is a proper defendant if it caused the improper payment of the claims. *Spinedex, supra,* 770 F.3d at 1297. Mr. Moon admits that he is not offering an opinion of whether Anthem is a proper defendant in this case.

For these reasons, the Court should strike and exclude Mr. Moon's Report, declaration, and testimony from consideration in this case.

## II.  **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence states that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702; *Bldg. Indus. Assn of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1154 (9th Cir. 2012).

"The district court acts as a 'gatekeeper' and preliminarily determines whether the expert testimony is reliable and whether the methodology can be applied to the facts of the case and is relevant to the task at hand." *CFM Communications, LLC v. Mitts Telecasting Co.*, 424 F.Supp.2d 1229, 1232-1233 (E.D. Cal. 2005) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 582, 592-93 (1993)). "Pursuant to Federal Rule of Evidence 104(a), the proponent of expert testimony bears the burden to establish admissibility by a preponderance of proof." *CFM,* 424 F.Supp.2d at 1233; *Daubert*, 509 U.S. at 592 n. 10.

Exclusion of expert testimony and opinion is still appropriate in matters where the judge acts as the trier of fact, because the court has "broad discretion to admit or exclude" expert testimony that is not helpful to its decision. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995) (holding that the court properly excluded expert opinion from a bench trial). A motion to strike expert designations brought in conjunction with motions for summary judgment is procedurally proper. *Lewert v. Boiron, Inc.*, 212 F.Supp.3d 917, 924 (C.D. Cal. 2016), aff'd 742 Fed.Appx. 282 (9th Cir. 2018) (addressing the parties' motions to strike experts and then applying those rulings on the parties' cross-motions for summary judgment).

### III. ARGUMENT

#### A. Moon Is Not Qualified as an Expert Witness on the Issues in this Case.

A court may exclude experts based on that the expert is not qualified. *See United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (finding that the district court did not abuse its discretion by excluding an expert who was not qualified). *See also Brighton Collectibles, Inc. v. Renaissance Group Int'l*, No. CV 06-1115 H (POR), 2008 WL 5500659, at *2 (S.D. Cal. May 13, 2008) (excluding expert testimony on consumer confusion because witness was not qualified to give opinion); *Starbucks Corp. v. Lundberg*, No. CV 02-948 HA, 2005 WL 6036699, at *5 (D. Or. May 25, 2005) (excluding expert witness testimony because witness was knowledgeable about the coffee business but was "not an expert in consumer perception."). Rule 702 requires that an expert's "scientific, technical, or other specialized knowledge" will help the trier of fact understand the evidence or to determine fact in issue. *See* Fed. R. Evid. 702(a). Mr. Moon does not possess such scientific, technical, or other specialized knowledge that will help the trier of fact, whether that be the Court or a jury.

In his Report, Mr. Moon describes the "relevant experience" he has for this case. (Report, p. 3; Tooch Decl., ¶ 4, Exh. 2, Deposition Testimony of Randall J. Moon ("Dep."), pp. 9-16.)  After graduating from Wayne State University Law School, he practiced as a tax attorney for about six years. (Dep. at p. 6.)  After that, he worked in a number of in-house positions:

- At ADM, he led the committee responsible for its pension plan and defined contribution plan investments for the company's plans in Canada.  He also served as a pension trustee for pension plans in the UK, Ireland, and Jamaica where he handled investments.  (Report at p. 3; Dep. at p. 9.)
- At CSX and ADM, he pioneered the use of the companies' captive insurance arrangements to fund certain welfare benefits, led the team at ADM that created a structure for global benefits administration, partnering with a global insurance company to administer benefits locally, and re-insured the risk to a captive insurance company for cost savings.  (Report at p. 3; Dep. at p. 11.)
- At Lowe's, he led the development of a number of key health care innovations relating to health care delivery, pharmacy, and joint and spine surgery.  In his deposition, he described this as working out an arrangement with regional hospitals by which Lowes would pay for the cost of surgery and the travel arrangements back for the member and his or her companion. (Report at p. 3; Dep. at pp. 12-13.)
- He has never worked in a claims department.  He is not familiar with healthcare billing.  He is not familiar with trauma services or claims.  (Dep. at pp. 14-16.)

The fact that Mr. Moon has worked at ERISA plans ***does not*** make him an expert qualified to offer opinions on healthcare claims administration or payment, when he worked in investment and other capacities completely unrelated to claims administration and payment.

Nor is Mr. Moon qualified to offer opinions on what he believes are "potential effects" of this Court's determination on the health benefits marketplace and on employers' ability to customize the design of their plans.  (*See* Moon Decl. at ¶ 3.)  Specifically, Mr. Moon opines, "[i]mposing *de facto* fiduciary liability on entities, like Anthem…has significant market-based implications[,]" and that "such a determination may result in increased pricing in the administrative service agreements between

self-funded plans and the entities with whom they contract because such entities would factor in the cost of potential fiduciary or plan administrator liability into its products and services." (*Id.* at ¶ 8.) He further opines that such "may disadvantage those plans….causing them to lose bargaining power," and that "[a]s a result, increased pricing in arrangements…ultimately will pass down to self-funded plans' employees and covered beneficiaries[.]" (*Id.*) Nothing in Mr. Moon's alleged experience indicates that he is an expert in predicting ramifications of a court decision on the health benefits marketplace or anywhere else, as he is not an economist nor anyone with experience in marketplace research.

Because Mr. Moon is not qualified to render an opinion on medical claims processing and administration, nor ramifications of this Court's decision on the health benefits marketplace, this Court should strike his designation and report and preclude Anthem from offering him as a witness in connection with its motion for summary judgment or at trial, if necessary.

**B.      Moon Used No Established Standard in Arriving at His Opinions**

Federal Rule 702 requires "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. 579, 597.  Such testimony must be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." F. R. Evid. 702(c)-(d).  "District court judges perform a 'gatekeeping role, and may apply four nonexclusive factors to determine whether proffered expert opinion is developed by the scientific method or is 'junk science.'" *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998), citing *Daubert, supra,* 509 U.S. at 597.  These factors include "(1) whether the method has gained general acceptance in the relevant scientific community, but also (2) whether the method has been peer-reviewed, (3) whether the method "can be (and has been) tested," and (4) whether there is a "known or potential rate of error." *Cabrera*, 134 F.3d at 1423; *Daubert*, 509 U.S. at 594.

The burden is on the proponent of the expert testimony to prove that the proposed expert testimony is admissible under Federal Rule of Evidence 702, *Daubert*, and its progeny. *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). "[T]he district court can exclude an expert's opinion if the expert fails to identify and defend the reasons" for his conclusions. *Id.* If the expert's testimony is not the product of peer-reviewed research produced outside the course of litigation, "the expert 'must explain precisely how [he] went about reaching [his] conclusions and point

to some objective source ... to show that [he has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in [his] field.'" *Id.* at 597 (formatting in original). For example in *Cabrera*, the court noted that a purported expert "did not identify any such objective source, or demonstrate that he followed a scientific method embraced by at least some other experts in the field" and there found his testimony does not satisfy *Daubert* or Rule 702. *Cabrera* at 1423.

As discussed herein, Mr. Moon relied on no principles whatsoever, much less scientifically valid principles, as foundation for his (legal) opinions. Rather, his opinion is based upon his own standard, which he could not articulate when pressed at deposition. The Court should exclude it.

### 1. Moon's Self-Created Standard Regarding ERISA Fiduciaries Lacks Foundation

The ERISA statute defines who qualifies as a fiduciary. A fiduciary of an ERISA plan is any entity that: (i) "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets;" (ii) … or (iii) "has **any discretionary authority or discretionary responsibility in the administration** of such plan." 29 U.S.C. § 1002(21)(A) (emphasis added). There are many cases interpreting this language. Yet, Mr. Moon neither consulted the statute nor the case law in arriving at his opinion.

The standard Mr. Moon created to determine whether an entity is not a *de facto* fiduciary if it "stays in its lane" – i.e. that it does not take on additional fiduciary responsibility other than what has been expressly given to them.

> Q: Okay. And – and why is it your opinion that Anthem is not a de facto administrator for those services?
>
> A: Because in my view, a de facto administrator is somebody who works beyond their mandate, if you will, and that since Bank of the -- I'm sorry. Since Anthem was administering the claim as a claims fiduciary for Bank of the West and they *stayed within that lane*, if you will, and they didn't go outside of that lane in the exercise of their responsibility, that they did not take on additional fiduciary responsibility, other than that which was given to them, pursuant to the relationship with Anthem and Bank of the West.
>
> Q: And this concept of staying in your lane, where do you get that from?
>
> A: That's how I think of it.
>
> Q: This is just your own personal standard that you've created?

> A: Yeah. After doing this for a long time. Yeah.
>
> Q: Okay. Not based upon any 9th Circuit Law or anything like that?
>
> A: I would think that it's consistent with caselaw, but I haven't read caselaw. I was asked to provide my opinion based on my experience.
> (Dep. at 50:19-20).

Using ones "own standard" renders an expert's opinion unreliable. *See G. Hawaii, Dep't of Human Servs.*, 703 F. Supp. 2d 1112, 1127 (D. Haw. 2010) (finding that because a doctor imposed "her own standard," her opinion was thus "unreliable pursuant to *Daubert*") (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) ("Any step that renders the analysis unreliable…renders the expert's testimony inadmissible.")).

Here, not only did Mr. Moon freely admit to creating his own personal standard in arriving at his opinions, his standard is inconsistent with statutory and case law regarding who qualifies as a fiduciary under ERISA.  First, the ERISA statute defines a fiduciary as an entity that "has **any discretionary authority or discretionary responsibility in the administration** of such plan."  29 U.S.C. § 1002(21)(A) (emphasis added).  Therefore, an entity that is given fiduciary responsibility over one area of the plan—e.g., claims payment—is a fiduciary under ERISA, regardless of whether it "stays in its lane."

Two of the Plans—PG&E and Bank of the West—REDACTED

REDACTED

For these plans, Anthem is a fiduciary regarding claims payment and appeals. Even if it "stays in its lane" by only exercising discretionary authority of claims payments, and does not get involved in pension investments, it is still a fiduciary under ERISA. *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000) (Although HMO "is not an ERISA fiduciary merely because it administers or exercises discretionary authority over its own HMO business, it may still be a fiduciary within the meaning of ERISA if it administers the plan.").

Moreover, even if the contract between an ERISA plan and an administrator states that the administrator will perform only ministerial functions, that administrator may still be a fiduciary if it in fact exercises authority over plan assets. *IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1418-1422 (9th Cir. 1997) ("ERISA defines fiduciary not in terms of formal trusteeship, but in functional terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties-and to damages-under § 409(a)."). *See also*, *In re Eshelman*, No. ADV 10-02473-A, 2012 WL 8244602, at *12 (Bankr. E.D. Cal. Nov. 5, 2012).

In *IT Corp.*, IT Corporation hired General American Life Insurance Company to administer its ERISA plan. Under their ASA, General American was to process claims and pay or deny them. A clause in the ASA stated that "under no circumstances shall the service contractor [General American] be considered the named fiduciary under the Plan." The Ninth Circuit nevertheless held that General American could be a fiduciary if it exercised authority over plan assets. The court held that "[e]ven if General American could by contract exonerate itself from fiduciary responsibilities to IT Corporation, there is no reason to suppose that the contract would exonerate General American from its duties to participants and beneficiaries of the ERISA plan." *Id.* at 1419; *see also Guyan Intern., Inc. v. Professional Benefits Adm'rs, Inc.*, 689 F.3d 793, (6th Cir. 2012) (claims administrator was ERISA fiduciary, even though administrator's agreements with employers expressly stated administrator was not a fiduciary, where administrator exercised authority or control over plan assets).

During his deposition, Mr. Moon cited a Department of Labor ("DOL") "Interpretive Bulletin" in an attempt to create a foundation for his opinion. However, the Ninth Circuit has confirmed that the

1  DOL's "questions and answers" in this bulletin regarding ministerial and fiduciary duties "do not
2  resolve" the issue of whether an entity has discretionary or ministerial duties.  Rather, where the duties
3  an entity performs involve plan interpretation and judgment, merely "calling it 'purely ministerial' does
4  not make it so." *IT Corp.*, 107 F.3d at 1420–21.

5  Further, the fact that a claims administrator does not have "final authority" regarding payment
6  of claims does not mean that the claims administrator cannot be held to be a fiduciary.  For example, in
7  *Gifford v. CALCO, Inc.*, 2005 WL 283524 (D. Ala. 2005), CALCO was the claims administrator for the
8  Alaska Public Utilities Insurance Trust ("APUIT").  Even though APUIT had final authority regarding
9  payment of claims, "it did not vitiate CALCO's discretionary authority and responsibilities." *Id.* at *4.
10  The court pointed out that if CALCO denied a claim and the participant did not appeal to the APUIT
11  trustees, "[t]hat would be the end of the story and the discretionary decision to deny a claim would have
12  been CALCO's alone." *Id.*  The same is true in this case.  If Anthem denied a claim and the member or
13  Natividad did not appeal the denial, the discretionary decision to deny a claim would have been
14  Anthem's alone.

15  Moreover, courts have held that entities can be deemed to be fiduciaries even if they do not
16  exercise discretionary authority.

> However, fiduciary status does not hinge on the exercise of discretion in some cases. Congress used the term "discretionary" when referring to authority or control over management or administration of the plan itself, but omitted the term with respect to "exercis[ing] **any** authority or control" over the management or disposition of plan assets. 29 U.S.C. § 1002(21)(A)(i) (emphasis added). This careful parsing of the definition reflects that Congress did not require a fiduciary to exercise discretion over participants' and beneficiaries' assets, but instead fiduciary duties automatically attach to control of assets.

23  *Edmonson v. Lincoln Nat. Life Ins. Co.*, 777 F.Supp.2d 869, 886 (E.D.Penn. 2011), citing *Board of
24  Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs. Inc.*, 237
25  F.3d 270, 275 (3d Cir. 2001); *In re Bos*, 2012 WL 8250010 (E.D. Cal. 2012), at * 3.

26  In this case, Anthem had discretionary authority to pay or deny healthcare claims, and it had
27  discretionary authority to determine how much to pay on such claims.  (*See* Tooch Decl., ¶ 8, Exh. 6
28  (Deposition of Western Growers), 35:11-25, 45:2-7, 55:1-6; ¶ 9, Exh. 7 ("District Council 16 Depo"),

22:4-11; ¶ 11, Exh. 9 ("Laborers Depo"), 20:25, 21:1-4; ¶ 12, Exh. 10 ("IBEW Depo"), 15:24-25, 16:1-6); ¶ 10, Exh. 8 (Bank of the West Depo), 36:2-3, 22:2-23); ¶ 15, Exh. 13 (Declaration of Operating Engineers), ¶¶ 7, 11, 18; ¶ 13, Exh. 11 (Declaration of Delicato Family Vineyards), ¶¶ 6-7; ¶ 14, Exh. 12 (Declaration of HealthComp), ¶ 4).

Moreover, Anthem also exercised authority or control over bank accounts for payment of the claims. (*See* Tooch Decl., ¶ 6, Exh. 4 (Deposition of Scott Hicks), 49:23-25, 50:1-11, 68:17-20; ¶ 5, Exh. 3 (Deposition of Martin Lutzeier) 33:7-15; ¶ 7, Exh. 5 (Deposition of Yvonne Trawinski), 27:22-25, 28:1-4). (*See also* District Council 16 Depo, 44:9-25, 45:1-11; Laborers Depo, 38:24-25, 39:1-22; IBEW Depo, 22:15-25.)

Regardless of how this court rules on whether Anthem was a fiduciary under these standards, what is important for this motion is that Anthem's expert considered none of this authority. Instead, he created his own standard for what constitutes a fiduciary, and which is at odds with controlling statutory and case law authority. *See Lust ex rel. Lust*, 89 F.3d at 598 ("the district court can exclude an expert's opinion if the expert fails to identify and defend the reasons for his opinions").

### 2. Moon's Speculations on Ramifications of the Court's Ruling Against Anthem Are Pure Conjecture

In his declaration submitted with Anthem's motion for summary judgment on October 18, 2019, Mr. Moon speculates that a decision against Anthem would mean increased pricing "because such entities [like Anthem] would factor in the cost of potential fiduciary or plan administrator liability into its products and services." (Moon Decl. at ¶ 8.) In addition to this new opinion being disclosed for the first time *after* the close of expert discovery on September 30, 2019 [Dkt. 50], it is pure conjecture. Mr. Moon cites no authority; he refers to no research, no article, no book that actually supports this prediction. Mr. Moon conducted no study to support his guesses as to what may occur in the industry. In fact, it took Mr. Moon about a week after he was first contacted by Anthem's counsel to arrive his opinions and draft his report in this case. (Dep. at pp. 18-19.) The Kaiser Family Foundation Employer Health Benefits 2018 Annual Survey he purportedly reviewed is included only with respect to the "prevalence of self-funded arrangements" to support that self-funded plans are prevalent—an irrelevant point Natividad does not dispute. This is clearly unsupported, lacking any foundation, and should be

10
NATIVIDAD'S MOTION TO STRIKE EXPERT RANDALL J. MOON
35133859.v1                                            Case No. 5:17-cv-04260-LHK

excluded. *Cabrera*, 134 F.3d at 1423 (excluding a purported expert that "did not identify any such objective source, or demonstrate that he followed a scientific method embraced by at least some other experts in the field").

Furthermore, while Mr. Moon frames this as something that would ultimately disadvantage the plans and their members, his opinion about the ramifications of this Court's ruling is but a veiled threat from Anthem that it will increase pricing with self-funded plans going forward if the Court does not rule in its favor. Anthem does not *need* to do this to avoid future lawsuits—it can simply price claims based on its contracts with its providers and abide by ERISA.

### C. The Court Should Exclude Moon's Improper Legal Opinions

It is well-established that "[e]xpert testimony is not proper for issues of law." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("experts interpret and analyze factual evidence. They do not testify about the law"). In such a case, "[e]xpert testimony...would have been not only superfluous but mischievous." *Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008). While expert testimony may be permissible to describe a complicated agency process, such testimony should not prescribe legal standards to apply to the facts of the case. *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 508-09 (2d Cir. 1977) (permitting expert testimony regarding SEC registration practices but excluding testimony interpreting legal effect of contract terms).

Mr. Moon's final conclusions in his report are that Anthem "did not act as a named or *de facto* fiduciary for any of the self-funded plans," and that Anthem's actions "were consistent with the ASAs and with the expectations of the plan sponsors." (*See* Report at p. 22.) As evidenced by the previous section, which details the various *legal* standards that govern Mr. Moon's opinions, Mr. Moon's opinions on (i) whether Anthem was a fiduciary, and (ii) whether Anthem's actions were consistent with the ASAs are questions of law—areas upon which Mr. Moon may not testify.

#### 1. Whether a Defendant Is a "Fiduciary" Under ERISA Is a Legal Opinion

Whether a defendant is a fiduciary within meaning of ERISA is a legal opinion. The meaning of federal statutes and regulations is a question of law and is not a proper basis for an expert opinion. *CFM,* 424 F.Supp.2d at 1234; *see, e.g., Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900

(7th Cir.1994) (excluding expert testimony regarding compliance with Federal Motor Vehicle Safety Standards); *United States v. S. Ind. Gas & Elec. Co.*, 55 Env't Rep. Cas. (BNA) 1597, 2002 WL 31427523, at *7-8, 2002 U.S. Dist. LEXIS 20936, at *23–24 (S.D.Ind. Oct. 24, 2002) (excluding expert testimony interpreting the Clean Air Act and its accompanying regulations); *TC Systems Inc. v. Town of Colonie*, 213 F.Supp.2d 171, 182 (N.D.N.Y.2002) (excluding expert testimony reviewing "FCC rulings and regulations" on the ground that it "usurps the role of the trial judge in determining the relevant law").

Whether a defendant is a fiduciary under ERISA is unquestionably a question of law. *Harris v. Amgen, Inc.*, 788 F.3d 916, 944 (9th Cir. 2015), cert. granted, judgment rev'd (on other grounds), 136 S. Ct. 758, 193 L. Ed. 2d 696 (2016); *Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001) ("where the facts are not in question, a party's status as an ERISA fiduciary is purely a question of law."); *Srein v. Frankford Trust Co.*, 323 F.3d 214, 220 (3d Cir. 2003) (same).

Mr. Moon's report, declaration, testimony, and opinion regarding whether Anthem is an ERISA fiduciary or "*de facto*" fiduciary—i.e. legally liable for violations of the ERISA statute—is an improper legal opinion and should be excluded from consideration on Anthem's motion for summary judgment and at trial, if applicable.

**2.      Moon's Opinion Regarding Contract Interpretation Is a Legal Opinion**

Mr. Moon's opinion that Anthem's actions were "consistent" with the ASAs is also a question of law. (Report at 22:24.) Upon review of only three claims, he opines that Anthem's "involvement" in the claims "did not exceed [] the responsibilities outlined in the ASA." (*Id.* at 22:12-14; *see also* 14:28 (Anthem's "activities are consistent with the ASA"); 18:20 (same).) Contract interpretation is a question of law for which expert testimony is improper: "The interpretation of a contract is an issue of law…Expert testimony is not proper for issues of law. Experts interpret and analyze factual evidence. They do not testify about the law[.]" *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (internal quotations and citations omitted). As such, Mr. Moon also may not testify on whether he believes Anthem's actions were consistent with the ASAs.

### 3. Opinion on Ramifications of the Court's Decision Against Anthem Is a Legal Opinion

Finally, Mr. Moon states in his declaration that he was requested to "explain the practical implications associated with a determination that an entity like Anthem…acted as a *de facto* plan fiduciary for the self-funded health benefits plans in this case and thereby became liable," and to "consider the potential effects that such a determination could have on the health benefits market place and on employers' ability to customize the design of their plans[.]" (Moon Decl. at ¶ 3.)

Opining on the ramifications of an action is not allowed from an expert witness—in fact, the fact that Mr. Moon is an attorney makes it even more of an issue. (*See, e.g., Rountree v. Ching Feng Blinds Indus. Co.*, No. 3:04 CV 112 JWS, 2008 WL 7811566, at *2 (D. Alaska June 17, 2008) ("but he may not opine as to the legal ramifications of that action. In light of Statler's background as an attorney, it should not be difficult for him to avoid offering the jury his own legal conclusions, and counsel for plaintiffs will be expected to take care in framing questions to avoid eliciting a legal conclusion"). The Court should exclude this opinion as well.

### D. Mr. Moon Admits that Anthem's Actions Could Have Caused the ERISA Plans to Pay Claims Improperly

In any event, Mr. Moon's opinions as to whether Anthem was a fiduciary is irrelevant to the adjudication of Anthem's motion for summary judgment or to the issues to be addressed at trial because he admits that if Anthem priced the claims at issue incorrectly, that would cause an improper denial of ERISA benefits. "[P]roper defendants under § 1132(a)(1)(B) for improper denial of benefits **at least include** [i] ERISA plans, [ii] formally designated plan administrators, [iii**] insurers or other entities responsible for payment of benefits**, and [iv] de facto plan administrators that **improperly deny or** *cause* **improper denial of benefits**." *Spinedex, supra,* 770 F.3d at 1297 (emphasis added). In this case, Anthem is a proper defendant because it is an insurer or other entity "that improperly denied or cause[d] improper denial of benefits." *Id.*

In his deposition, Mr. Moon testified that if Anthem was incorrect in how it priced Natividad's trauma claims, Anthem's actions would have caused the ERISA plans to pay the claims incorrectly:

Q: Okay. Let's assume that Anthem didn't price the claim correctly for patient SR. Okay?

A: Uh-huh. Yes.

Q: Okay. **That would have caused the plan to pay the claim incorrectly**, correct?

A: It could have been a mistake. **Yes**.

Q: Well, let's assume that it wasn't a mistake, and that Anthem just interpreted its contract incorrectly, and **that would have caused the plan to pay the claim incorrectly**, correct?

A: **Yes.**

Q: Okay. And so -- and the same would be true for all of the claims in this case, right? **If Anthem was incorrect in how to price the claims, that would cause the ERISA plans to pay the claim incorrectly**, right?

A: **Yes**.  (Dep. at 62:8-24.) (Emphasis added.)

Therefore, regardless of whether Anthem was a named fiduciary or plan administrator, because it improperly took the position that the emergency services rate in the Facility Agreement could be applied to Natividad's trauma claims, its actions caused the ERISA plans to improperly pay the benefits that were due under the plans. As such, it is a proper defendant in this case, rendering Mr. Moon's opinion irrelevant.

## IV. CONCLUSION

For the foregoing reasons, Natividad requests that this Motion be granted and that the Court excludes Moon's Report and his testimony from this matter.

DATED: November 1, 2019                          **KING & SPALDING LLP**

By: _____
Daron L. Tooch
Ariana E. Fuller
Attorneys for Plaintiff COUNTY OF MONTEREY dba NATIVIDAD MEDICAL CENTER

## PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in the county of Los Angeles, State of California, in the office of a member of the bar of this Court, at whose direction this service was made. I am over the age of eighteen years and not a party to the within action.

On November 1, 2019, I served the following documents in the manner described below:

**MOTION TO STRIKE THE EXPERT DESIGNATION, REPORT, AND OPINION OF RANDALL J. MOON**

☒ BY ELECTRONIC SERVICE: By serving a true and correct copy through the Court's ECF Filing System.

On the following part(ies) in this action:

Michael M. Maddigan, Esq.  
Poopak Nourafchan, Esq.  
Vassi Iliadis, Esq.  
**HOGAN LOVELLS US, LLP**  
1999 Avenue of the Stars, Suite 1400  
Los Angeles, CA 90067  
Tel: (310) 785-4600  
Fax: (310) 785-4601  
Email: Michael.maddigan@hoganlovells.com  
Email: poopak.nourafchan@hoganlovells.com  
Email: vassi.iliadis@hoganlovells.com  

*Attorneys for Defendants*  
*BLUE CROSS OF CALIFORNIA d/b/a*  
*ANTHEM BLUE CROSS and ANTHEM BLUE*  
*CROSS LIFE AND HEALTH INSURANCE*  
*COMPANY*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on November 1, 2019, at Los Angeles, California.

*/s/ P. Newler*

Patricia Newler

---

15

NATIVIDAD'S MOTION TO STRIKE EXPERT RANDALL J. MOON

35133859.v1

Case No. 5:17-cv-04260-LHK