1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

COUNTY OF MONTEREY,

Case No. 17-CV-04260-LHK

13

Plaintiff,

14

v.

Re: Dkt. Nos. 91, 95

15

BLUE CROSS OF CALIFORNIA, et al.,

16

Defendants.

17

18

Plaintiff County of Monterey dba Natividad Medical Center ("Natividad") brings the

19

instant lawsuit against Defendants Blue Cross of California dba Anthem Blue Cross, and Anthem

20

Blue Cross Life and Health Insurance Company (collectively, "Anthem") for improper denial of

21

benefits under 29 U.S.C. § 1132(a)(1)(B).  Before the Court is Natividad's motion for summary

22

judgment and Anthem's motion for summary judgment.  Having considered the parties' briefs, the

23

relevant law, and the record in this case, the Court GRANTS Anthem's motion for summary

24

judgment, and the Court DENIES Natividad's motion for summary judgment.

25

**I.      BACKGROUND**

26

**A.  Factual Background**

27

1

28

Case No. 17-CV-04260-LHK
ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Natividad is a 172-bed acute care hospital owned and operated by the County of Monterey. ECF No. 57 (First Amended Complaint, hereinafter "FAC") ¶ 3.  On or about July 23, 2012, Anthem and Natividad entered into a Facility Agreement pursuant to which Natividad agreed to provide certain healthcare services to Anthem members and Anthem agreed to pay Natividad certain rates for those services.  ECF No. 95-4 ("Leon Decl.") ¶ 3.

The Facility Agreement governs not only claims for Anthem's insureds, but also services claims for members of "Other Payors" for whom Anthem provides claims processing services and who have access to Anthem's network.  ECF No. 91 at 4.  Natividad alleges that these "Other Payors" include 32 ERISA Plans that Natividad has identified in its FAC.  FAC ¶¶ 7, 15.  The FAC alleges that these ERISA Plans entered into contracts with Anthem that required the ERISA Plans to comply with the terms of Anthem's contracts with providers in Anthem's Managed Care Network, including the Facility Agreement between Anthem and Natividad.  *Id.* ¶ 18.  Natividad also alleges that Anthem functions as the *de facto* plan administrator for the ERISA Plans.  *Id.* ¶ 10.

At the time Natividad and Anthem entered into the Facility Agreement, Natividad did not have its certification to provide trauma services to patients.  Leon Decl. ¶ 4.  Therefore, the parties did not agree on a permanent rate at which Anthem would reimburse Natividad for trauma services.  *Id.* ¶ 5; ECF No. 94-8 Ex. 1 ("Facility Agreement") at Plan Compensation Schedule ¶ 10.  Instead, the Facility Agreement contemplated that the parties would negotiate new trauma rates once Natividad obtained its certification.  *Id.*  On January 5, 2015, Natividad received its certification to provide trauma services and began providing trauma services to patients.  Leon Decl. ¶ 7.  In 2014, 2015, and 2016, the parties attempted to negotiate a trauma services rate but could not come to an agreement.  *Id.* ¶ 9.  In the interim, Anthem interpreted the Facility Agreement to apply the emergency services rate contained within the Facility Agreement to the trauma claims.  *Id.* ¶ 10.  The emergency services rate represents 64.5% of charges, with a cap of $5,000 for outpatient services.  *Id.*  According to Natividad, "[b]ased on Anthem's processing of

2

the claims and appeals, the self-insured payers that access Anthem's network, including the ERISA plans at issue here, only paid the 64.5% rate to Natividad for inpatient trauma claims, and 64.5% of charges with a cap of $5,000 for outpatient trauma claims." *Id.* ¶ 11.  The FAC alleges that the total difference between Natividad's billed charges and the amounts that the ERISA Plans are paying for the trauma claims exceeds $18 million.  FAC ¶ 29.

Natividad brings the instant claims as an assignee of its patients' benefits under the ERISA Plans.  Indeed, because "[a]s a policy, Natividad requires that each patient admitted, including ERISA plan members, assigns his or her insurance benefits to Natividad.  Each prospective patient signs a document entitled Conditions of Admission Financial Agreement.  The Conditions of Admission form includes a provision in which the patients assign the right to payment of benefits to Natividad.  Leon Decl. ¶ 16.  The assignment of insurance benefits provision states as follows:

> I assign and authorize direct payment to the hospital of all insurance benefits payable for this hospitalization or for these outpatient services. I agree that the insurance company's payment to the hospital pursuant to this authorization shall discharge the insurance company's obligations to the extent of such payment. I understand that I am financially responsible for charges not paid according to this assignment.

ECF No. 92 ¶ 35, Ex. HH; *id.* ¶ 47, Ex. TT; *id.* ¶ 39, Ex. LL; *id.* ¶ 43, Ex. PP; *id.* ¶ 33, Ex. FF; *id.* 17, Ex. P; *id.* ¶ 13, Ex. L.  Natividad informed Anthem that Natividad was operating as an assignee of the patients because every claim submission to Anthem included a UB-04 form, which indicates on Box 54 that the provider, Natividad, had an assignment of benefits from the member.  Leon Decl. ¶¶ 17–18.

Upon receiving the claim submissions from Natividad, Anthem provided explanations of benefit ("EOBs") that indicated that Anthem priced the claims at the emergency services rate.  *Id.* ¶¶ 23, 31, 38, 45, 50, 57, 64, 71, 80.  The ERISA Plans reimbursed Natividad in accordance with the emergency services rate.  *Id.*  After Natividad received the improper emergency services rate for the trauma claims, Natividad sent Anthem appeal letters.  *Id.* ¶¶ 24–26, 32–33, 39–40, 51–52, 58–59, 65–66, 72–75, 81–84.  Anthem responded to the letters by explaining that the claims were

3

1    processed correctly in accordance with the Facility Agreement and that the appeal process had

2    been exhausted.  *Id.*

3            In light of the dispute about the appropriate rate included in the Facility Agreement,

4    Natividad filed a demand for JAMS arbitration on August 6, 2016.  *See generally* ECF No. 117-4

5    ("Demand for Arbitration").  In Natividad's demand for arbitration, Natividad alleged that Anthem

6    violated an implied contract, and Natividad also sought recovery under quantum meruit and a

7    declaratory judgment regarding the reasonable value of the trauma services that Natividad

8    provided.  *Id.*  On August 30, 2018, the arbitrator issued the Final Arbitration Award.  ECF No.

9    95-1 ("Tooch Decl.") ¶ 30.  In the Final Arbitration Award, the arbitrator concluded that Anthem

10   and Natividad did not agree to reimburse Natividad's trauma claims at the emergency services

11   rate.  *Id.*  Instead, the arbitrator concluded that the parties impliedly agreed to reimburse Natividad

12   for trauma claims at reasonable value, which the arbitrator declared to be 80% of the billed

13   charges.  *Id.*  Anthem and Natividad have since executed an amendment to the Facility Agreement

14   with an effective date of May 1, 2019, which requires Anthem to pay a rate 80% of billed charges

15   for trauma claims with a date of service from April 21, 2018 onward.  Leon Decl. ¶¶ 12–15.

16           In its capacity as an assignee of its patients' benefits, Natividad now asserts one claim

17   against Anthem for failure to pay plan benefits under the Employee Retirement Income Security

18   Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  FAC ¶¶ 183–194.  Specifically, Natividad

19   "believes that ERISA Plans at issue in this case required Anthem and the ERISA Plans to pay

20   Natividad customary and reasonable rates for the inpatient and outpatient trauma services that

21   Natividad has provided to the ERISA Plan members."  *Id.* ¶ 192.

22           Therefore, Natividad seeks compensatory damages and declaratory relief.  *Id.* at 39.

23   Specifically, Natividad seeks a declaration that it is "entitled to be paid a reasonable and

24   customary amount for the trauma services it has provided, and is providing to the ERISA Plans,"

25   and that Anthem's "practice of pricing, processing, and paying Natividad's trauma claims at the

26   emergency services rate in the Facility Agreement is improper."  *Id.*

27                                                        4

28   Case No. 17-CV-04260-LHK
     ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
     MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

## B. Procedural History

Natividad filed its initial complaint on July 27, 2017.  *See* ECF No. 1.  On November 11, 2017, the Court stayed the case pending the parties' arbitration, which concerned breach of implied contract and the issue of the reasonable value of trauma services Natividad provided to Anthem members.  ECF No. 29; FAC ¶¶ 33–35.  However, because the arbitration concerned only Anthem's fully-insured members, it did not directly encompass the ERISA Plan claims at issue in this litigation.  FAC ¶ 34.

On August 10, 2018, the arbitrator issued the Final Arbitration award.  Tooch Decl. ¶ 30.  In the Final Arbitration Award, the arbitrator concluded that Anthem and Natividad did not agree to reimburse Natividad's trauma claims at the emergency services rate.  *Id.*  Instead, the arbitrator concluded that the parties impliedly agreed to reimburse Natividad for trauma claims at reasonable value, which the arbitrator declared to be 80% of the billed charges.  *Id.*

On October 8, 2018, Anthem filed a motion to dismiss the initial complaint.  ECF No. 37.  Natividad opposed on October 22, 2018.  ECF No. 41.  Anthem replied on October 29, 2018. ECF No. 42.

On January 24, 2019, at the initial case management conference, the Court lifted the stay and directed the Clerk to reopen the case file.  ECF No. 50.

On January 28, 2019, the Court granted Anthem's motion to dismiss the initial complaint without prejudice.  ECF No. 52.  Specifically, the Court found that Natividad's complaint failed to plead factual allegations with specificity and that factual allegations were missing from the complaint, "including the specific claims, dates, explanations of benefits, and the ERISA Plan provisions at issue."  *Id.* at 8.  The Court further requested that "the parties meet and confer to assess whether claim numbers, patients numbers, or some other claim or patient identifiers could be used in public filings that would protect patient privacy, but enable the parties to identify the relevant claim or patient without sealing" and that "[u]sing such identifiers would minimize the sealing burdens on the parties and the Court in this case."  *Id.* at 9.  The Court also found that Natividad's complaint insufficiently alleged standing and that Natividad needed to allege the

Case No. 17-CV-04260-LHK
ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    specific language of the assignment of benefits.  *Id.* at 9–11.  In its motion to dismiss briefing,

2    Natividad did not contest its failure and instead argued that it could "easily cure any deficiency by

3    quoting the language of its assignment of benefits and/or attaching a sample assignment of

4    benefits to any amended complaint."  *Id.* at 11.  Finally, the Court found that Natividad's

5    complaint failed to sufficiently allege that Anthem is a *de facto* plan administrator because

6    Natividad did not specifically identify the ERISA Plans or claims at issue, and thus "the related

7    allegations about how Anthem controlled or managed these ERISA Plans [were] necessarily vague

8    and conclusory."  *Id.* at 11–13.  The Court granted Natividad leave to amend to cure these

9    deficiencies.  *Id.* at 13–14.

10          On February 26, 2019, the Court granted the parties' stipulation to extend Natividad's

11    deadline to file its First Amended Complaint ("FAC").  ECF No. 54.  The Court also explained

12    that the number of claims and ERISA Plans that Natividad intended to add to the FAC would be

13    unmanageable.  *Id.*  Thus, the Court required the parties to select ten claims—five chosen by

14    Natividad and five chosen by Anthem—to litigate through trial.  *Id.*

15          On March 13, 2019, Natividad filed its FAC.  *See* FAC.  In its FAC, Natividad listed the

16    ten claims chosen by the parties (the "Selected Claims"), which consisted of: (1) J.F. Reference

17    #45 (Natividad Claim 1); (2) R.G. Reference #49 (Natividad Claim 2); (3) H.L. Reference #75

18    (Natividad Claim 3); (4) R.M. Reference #92 (Natividad Claim 4); (5) M.M. Reference #105

19    (Natividad Claim 5); (6) B.C. Reference #12 (Anthem Claim 1); (7) A.L. Reference #83 (Anthem

20    Claim 2); (8) S.R. Reference #124 (Anthem Claim 3); (9) O.R. Reference #131 (Anthem Claim 4);

21    and (10) J.R. Reference #136 (Anthem Claim 5).  *Id.* ¶¶ 44–182.  These ten claims involved nine

22    different ERISA plans (the "ERISA Plans").

23          On March 27, 2019, Anthem filed a motion to dismiss the FAC.  *See* ECF No. 58.  On

24    April 10, 2019, Natividad opposed.  ECF No. 61.  Anthem replied on April 17, 2019.  ECF No.

25    64.

26          On July 18, 2019, the Court denied Anthem's motion to dismiss the FAC.  ECF No. 81.

27

28    Case No. 17-CV-04260-LHK
ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Specifically, the Court concluded that in the FAC, Natividad adequately alleged that Anthem acted as a *de facto* plan administrator for the relevant nine ERISA plans. *Id.* at 11. The Court also concluded that Natividad adequately alleged that Natividad possessed standing as an assignee for the Selected Claims, *id.* at 17, and that Natividad alleged that it exhausted administrative remedies for the Selected Claims, *id.* at 19.

On October 18, 2019, Anthem filed a motion for summary judgment. ECF No. 91. On November 1, 2019, Natividad opposed, ECF No. 118, and on November 8, 2019, Anthem filed a reply, ECF No. 129.

On October 18, 2019, Natividad also filed a motion for summary judgment. ECF No. 95. On November 1, 2019, Anthem opposed, ECF No. 117, and on November 8, 2019, Natividad filed a reply, ECF No. 127.

On November 1, 2019, Natividad filed a motion to strike the testimony of Anthem's expert, Randall J. Moon. ECF No. 113. On November 15, 2019, Anthem opposed the motion to strike, ECF No. 130, and on November 22, 2019, Natividad filed a reply, ECF No. 131.

## II.    LEGAL STANDARD

Under ERISA § 502, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) ("If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits."). A claim of denial of benefits in an ERISA case "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir.2009). If the plan confers such discretion, then the denial is reviewed for an abuse of discretion. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 110–11

7

1   (2008).

2        "Traditional summary judgment principles have limited application in ERISA cases

3   governed by the abuse of discretion standard." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d

4   917, 930 (9th Cir. 2012).  Hence, where abuse of discretion is the appropriate standard to review a

5   purported denial of benefits, "the usual tests of summary judgment, such as whether a genuine

6   dispute of material fact exists, do not apply."  *Id.* (internal quotation marks and citation omitted).

7   Instead, the relevant motions for summary judgment merely provide "the conduit to bring the legal

8   question before the district court."  *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009)

9   (internal quotation marks and citation omitted).

10  **III.    DISCUSSION**

11       The instant case involves only a single cause of action: 29 U.S.C. § 1132(a)(1)(B).  Under

12  29 U.S.C. § 1132(a)(1)(B), Natividad seeks "to recover benefits due to [Natividad]" that are

13  allegedly owed pursuant to the terms of at least thirty-two different ERISA plans.  Natividad

14  asserts that Natividad received the right to bring claims under the ERISA plans through

15  assignment from ERISA beneficiaries.  In light of the large number of claims involved, the Court

16  ordered the parties to select ten different representative claims, which together implicated the

17  terms of nine different ERISA plans.  FAC ¶¶ 44–182.  Natividad has since withdrawn one of the

18  selected claims.[1]  Accordingly, there are now a total of nine claims pending before the Court,

19  which together implicate the terms of eight different ERISA plans (the "ERISA Plans").  The

20  claims (the "Selected Claims"), and the ERISA Plans they implicate, are listed below:

21       1.   Anthem Claim 5, J.R. Reference # 136 – Western Growers Assurance Trust ("Western

22            Growers");

23       2.   Natividad Claim 5, M.M. Reference # 105 – District Council 16 Health and Welfare

24

25  _____

26  [1] ECF No. 95 at 4 n.1 (explaining that as to Anthem's selected claim, assigned by "A.L." under the
    Robert F. Kennedy Plan, "[t]his claim does not properly belong in this case, and Natividad
27  therefore withdraws it").  On the basis of Natividad's withdrawal, the Court GRANTS summary
    judgment to Anthem with respect to the claim in question, which is Anthem Claim 2.

28  Case No. 17-CV-04260-LHK
    ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
    MOTION FOR SUMMARY JUDGMENT

1      Trust Fund ("District Council 16");

2        3. Natividad Claim 3, H.L. Reference # 75 – Bank of the West Medical Plan ("Bank of

3          the West");

4        4. Natividad Claim 4, R.M. Reference # 92 – Laborers Health and Welfare Trust Fund for

5          Northern California ("Laborers");

6        5. Anthem Claim 4, O.R. Reference # 131 – Laborers;

7        6. Natividad Claim 2, R.G. Reference # 49 – IBEW Local 234 Health & Welfare Fund

8          ("IBEW");

9        7. Natividad Claim 1, J.F. Reference # 45 – Pacific Gas & Electric Health Care Benefits

10         Plan ("PG&E");

11       8. Anthem Claim 1, B.C. Reference # 12 – Operating Engineers Health & Welfare Trust

12         Fund ("Operating Engineers"); and

13       9. Anthem Claim 3, S.R. Reference # 124 – Delicato Family Vineyards Plan ("Delicato

14         Family Vineyards").

15      The parties' cross-motions for summary judgment raise two main questions for the Court's

16 resolution.  First, the parties dispute the extent to which Anthem abused its discretion as plan

17 administrator in pricing the Selected Claims at the emergency services rate.  Natividad maintains

18 that the Final Arbitration Award is entitled to collateral estoppel and effectively establishes that

19 Anthem abused its discretion.  In the alternative, Natividad argues that the Court should

20 independently determine that Anthem abused its discretion in interpreting the Facility Agreement

21 to apply the emergency services rate to the Selected Claims.

22      Second, the parties dispute the extent to which Anthem may be named a defendant in the

23 instant case to begin with.  Anthem maintains that Natividad's lawsuit is improper for four

24 independent reasons: (1) Natividad does not seek to recover ERISA benefits under 29 U.S.C. §

25 1132(a)(1)(B); (2) Anthem is not a proper defendant under 29 U.S.C. § 1132(a)(1)(B); (3)

26 Natividad lacks derivative authority to bring claims under 29 U.S.C. § 1132(a)(1)(B) on behalf of

27

28

the ERISA beneficiaries; and (4) Natividad failed to exhaust administrative remedies.

The Court ultimately concludes that Natividad's theory fails with respect to all nine of the Selected Claims.  The Court reaches this conclusion because even if Anthem could be named as a defendant in the instant case, Anthem did not abuse its discretion in interpreting the Facility Agreement to apply the emergency services rate to the Selected Claims.

### A. Anthem Did Not Abuse Its Discretion in Pricing the Selected Claims at the Emergency Services Rate.

Anthem did not abuse its discretion in pricing the Selected Claims at the emergency services rate.  First, the Final Arbitration Award is not entitled to collateral estoppel on the issue of whether Anthem abused its discretion.  Second, the Court's examination of the record establishes that Anthem did not abuse its discretion in pricing the Selected Claims at the emergency services rate.  The Court analyzes each of these two issues in turn.

### 1. Collateral Estoppel Does Not Resolve the Question of Whether Anthem Abused Its Discretion.

Natividad contends that the doctrine of collateral estoppel applies in the instant case. According to Natividad, the Final Arbitration Award held that "[t]he parties did not agree that Natividad's claims were to be reimbursed at either the emergency services rate or Other Services rate."  ECF No. 95 at 16–17 (quoting Tooch Decl. Ex. 76 ("Final Arbitration Award") at 15). Natividad contends that the Final Arbitration Award resolves the question of whether Anthem abused its discretion in the instant case.  Anthem disagrees.  Anthem argues that because the instant case involves federal statutory rights, the arbitration decision is not entitled to collateral estoppel.  ECF No. 117 at 25.  Further, Anthem maintains that the instant case presents ERISA-related issues that were not before the arbitrator.  *Id.*  The Court agrees with Anthem.  Issue preclusion does not resolve the question of whether Anthem abused its discretion.

The Full Faith and Credit Statute, 28 U.S.C. §1738, requires federal courts "to give the same 'full faith and credit' to the records and judicial proceedings of any state court that they would receive in the state from which they arise."  *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175,

United States District Court
Northern District of California

1177 (9th Cir. 1989). The Ninth Circuit has explained that a "state court's confirmation of [an] arbitration award constitutes a judicial proceeding for purposes of section 1738, and thus must be given the full faith and credit it would receive under state law." *Id.* at 1178. Here, Natividad confirmed the arbitration award in California state court. ECF No. 127 Ex. A. Accordingly, the Court must apply the California state law of issue preclusion in order to determine whether the arbitration award is entitled to issue preclusion. *See Caldeira*, 866 F.2d at 1178 ("The state court's confirmation of the arbitration award constitutes a judicial proceeding for purposes of section 1738, and thus must be given the full faith and credit it would receive under state law.").

Under California state law, five threshold requirements must be met before issue preclusion applies. "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990). If these threshold requirements are met, then the Court must further consider whether the public policy that underlies issue preclusion would be advanced by applying issue preclusion to the arbitration decision. In other words, as the Supreme Court of California explained, "[t]he public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitute sound judicial policy." *Id.* at 344; *see also In re Kaligh*, 338 B.R. 817, 824 (B.A.P. 2006) (applying California state law on issue preclusion to determine whether arbitration award was entitled to issue preclusion). Further, under California law, "preclusion is an affirmative matter under which the party asserting preclusion bears the burden of establishing the requirements for its imposition." *Id.*

11

Case No. 17-CV-04260-LHK
ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S MOTION FOR SUMMARY JUDGMENT

The Court's issue preclusion analysis quickly comes to an end.  This is so because Natividad does not satisfy the first threshold factor, *i.e.*, whether the issue sought to be precluded from relitigation is identical to that decided in a former proceeding.  None of the issues that were decided in the arbitration are "identical" to the issue of whether Anthem abused its discretion in interpreting the Facility Agreement.  *Lucido*, 51 Cal.3d at 342.

In Natividad's demand for arbitration, Natividad alleged that Anthem violated an implied contract, and Natividad also sought recovery under quantum meruit and a declaratory judgment regarding the reasonable value of the trauma services that Natividad provided.  ECF No. 117-4 ("Demand for Arbitration").  In the Final Arbitration Award, the arbitrator concluded that Anthem and Natividad did not agree to reimburse Natividad's trauma claims at the emergency services rate.  Tooch Decl ¶ 30.  Instead, the arbitrator concluded that the parties impliedly agreed to reimburse Natividad for trauma claims at reasonable value, which the arbitrator declared to be 80% of the billed charges.  *Id.*

Throughout Natividad's briefing on the instant motions, the precise issue to which Natividad seeks to apply the doctrine of issue preclusion is somewhat unclear.  However, in Natividad's briefing, Natividad appears to point to two issues that the arbitration decision ostensibly resolved, and which Natividad now claims are entitled to preclusive effect.  First, Natividad asserts that the arbitrator determined that "[t]he parties did not agree that Natividad's claims were to be reimbursed at either the emergency services rate or Other Services rate" in the Facility Agreement.  ECF No. 95 at 16–17 (internal quotation marks omitted).  Second, Natividad argues that the arbitrator decided "the issue of the reasonable value of Natividad's trauma services."  ECF No. 127 at 15.  Neither issue is "identical" to the issue of whether Anthem abused its discretion.

First, the fact that the arbitrator ultimately concluded that "[t]he parties did not agree that Natividad's claims were to be reimbursed at either the emergency services rate or Other Services rate" in the Facility Agreement is not "identical" to any issue presently before the Court.  Here,

Case No. 17-CV-04260-LHK
ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   Natividad solely brings a claim for improper denial of benefits under 29 U.S.C. § 1132(a)(1)(B).

2   Thus, as Natividad concedes, Natividad's 29 U.S.C. § 1132(a)(1)(B) claim requires that the Court

3   determine whether Anthem *abused its discretion* in interpreting the Facility Agreement.  ECF No.

4   95 at 14 ("Where an administrator has discretionary authority to determine ERISA benefits, the

5   standard of review in ERISA cases is abuse of discretion.").

6       As discussed further *infra*, in Section III.A.2.a, under the abuse of discretion standard, the

7   Court's analysis is not based on "whose interpretation of the plan documents is most persuasive,

8   but whether the [plan administrator's] interpretation is unreasonable." *Canseco v. Construction*

9   *Laborers Pension Trust for S. Cal.*, 93 F.3d 600, 606 (9th Cir. 1996) (internal quotation marks and

10  citation omitted).  Thus, the Ninth Circuit "equate[s] the abuse of discretion standard with

11  'arbitrary and capricious' review." *Tapley v. Locals 302 and 612 of Intern. Union of Operating*

12  *Engineers-Employers Constr. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013).  Under this

13  approach, an "interpretation of Plan language is entitled to a high level of deference and will not

14  be disturbed unless it is 'not grounded on *any* reasonable basis.'"  *Id.* (quoting *Oster v. Barco of*

15  *Cal. Emps.' Ret. Plan*, 869 F.2d 1215, 1218 (9th Cir. 1988)).  Further, Anthem's "interpretation

16  need not be the one this court would have reached but only an interpretation which has rational

17  justifications." *O'Rourke v. N. Cal. Elec. Workers Pension Plan*, 934 F.3d 993, 1001 (9th Cir.

18  2019) (internal quotation marks and citation omitted).

19      Thus, the determination of whether Anthem *abused its discretion* in interpreting the

20  Facility Agreement is different from whether there was *in fact* an implied agreement between

21  Anthem and Natividad.  This difference is critical.  Under California law, "[w]hether an issue is

22  'identical' to a previously adjudicated issue for purposes of collateral estoppel depends on the

23  burden and standard of proof applicable in each proceeding or action." *Bennett v. Rancho Cal.*

24  *Water Dist.*, 35 Cal. App. 5th 908, 919 (2019).  Thus, California courts have held that "collateral

25  estoppel does not apply where the two proceedings at issue have different burdens of proof or

26  where the burden of proof falls on a different party in each proceeding." *People v. Esmaili*, 213

27

28  Case No. 17-CV-04260-LHK
    ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
    MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

Cal. App. 4th 1449, 1463 (2013).  Here, the arbitrator specifically explained that the arbitration

decision was informed by particular "determinations by the Arbitrator as to credibility and

relevance, burden of proof considerations, legal principles and the weighing of evidence, both oral

and written."  ECF No. 94-6 at 2.  Indeed, the arbitrator specifically relied on the fact that

"Anthem [] failed to carry its burden to prove that the expressed intent of both parties was to

permit it to reimburse Natividad indefinitely for trauma services at the emergency services rate."

*Id.* at 9.  As discussed in the foregoing, Anthem does not bear any such burden under 29 U.S.C. §

1132(a)(1)(B) in the instant case, since Anthem's interpretation of the Facility Agreement "is

entitled to a high level of deference and will not be disturbed unless it is 'not grounded on *any*

reasonable basis.'"  *Tapley*, 728 F.3d at 1139 (quoting *Oster*, 869 F.2d at 1218).  Hence, under

California law, the Final Arbitration Award does not resolve the question of whether Anthem

abused its discretion.  *See, e.g.*, *In re Sylvia R.*, 55 Cal. App. 4th 559, 563 (1997) (explaining that

"the doctrine of collateral estoppel may not apply where two proceedings have differing burdens

of proof").

Second, "the issue of the reasonable value of Natividad's trauma services" is also not

"identical" to the issue of whether Anthem abused its discretion.  ECF No. 127 at 15.  Natividad

contends that the Court may find "that the Facility Agreement contained an open price term,"

which Natividad contends would then require the application of reasonable value under California

law.  ECF No. 95 at 15–16.  However, Anthem did not read the Facility Agreement to include an

open price term.  On the contrary, Anthem read the Facility Agreement to apply the emergency

services rate to the Selected Claims.  ECF No. 117 at 23 ("Simply put, the emergency services rate

applied to trauma services until the parties reached an agreement on a new trauma rate.").  The

question now before the Court is whether Anthem's understanding that the emergency services

rate applied to the Selected Claims constituted abuse of discretion, not whether the Court would

independently reach a different interpretation of the Facility Agreement.  *See O'Rourke*, 934 F.3d

at 1001 (explaining that the interpretation of an ERISA plan "need not be the one this court would

United States District Court
Northern District of California

have reached, but only an interpretation which has rational justifications").

Natividad therefore fails to carry "the burden of establishing the requirements for [claim preclusion's imposition" under California law in the instant case. *In re Kaligh*, 338 B.R. at 824. Accordingly, the Court must independently determine whether Anthem abused its discretion in pricing the Selected Claims at the emergency services rate.

**2.  Anthem Did Not Abuse Its Discretion.**

The parties dispute whether Anthem violated 29 U.S.C. § 1132(a)(1)(B) "in applying the emergency services rate in the Facility Agreement to price the trauma services Natividad provided to the ERISA Plan members." ECF No. 95 at 15. Natividad contends that Anthem's interpretation of the Facility Agreement to apply the emergency services rate to the Selected Claims represented an abuse of discretion under the eight relevant ERISA Plans. *Id.* at 14. Anthem disagrees and maintains that Anthem reasonably believed that "the emergency services rate [in the Facility Agreement] applied to trauma services until the parties reached an agreement on a new trauma rate." ECF No. 117 at 23.

**a.  Standard of Review.**

In the ordinary course, the Court's first step in a claim for denial of benefits under ERISA is to determine whether to apply abuse-of-discretion or de novo review to a plan administrator's denial of benefits. *See, e.g.*, *Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan*, No. 16-cv-00486-EDL, 2018 WL 1989494, at *6 (N.D. Cal. Jan. 23, 2018) (explaining that in action to recover benefits under 29 U.S.C. § 1132(a)(1)(B), the default standard is de novo, but that the standard may shift to abuse of discretion if the plan confers discretion on a plan administrator). Here, however, the Court's task is simple. Both parties agree that abuse of discretion constitutes the appropriate standard of review that the Court must apply to review Anthem's actions in pricing the trauma claims. ECF No. 95 at 14 ("Where an administrator has discretionary authority to determine ERISA benefits, the standard of review in ERISA cases is abuse of discretion."); ECF No. 117 at 22 ("Anthem did not abuse its discretion in applying the

15

emergency services rate in the facility agreement"); *see, e.g.*, *Beaston v. Sundt Cos.*, 804 F. Supp. 2d 1011, 1016 (D. Ariz. 2011) (Tashima, J.) ("Plaintiff appears to concede that abuse of discretion is the proper standard for reviewing her claim that the Committee improperly denied her the right to hold her account in Sundt stock until September 30, 2007."). Accordingly, the Court applies the abuse of discretion standard to determine whether Anthem improperly denied benefits under 29 U.S.C. § 1132(a)(1)(B).

As discussed in the foregoing, under the abuse of discretion standard, the Court's analysis is not based on "whose interpretation of the plan documents is most persuasive, but whether the [plan administrator's] interpretation is unreasonable." *Canseco*, 93 F.3d at 606 (internal quotation marks and citation omitted). Thus, the Ninth Circuit "equate[s] the abuse of discretion standard with 'arbitrary and capricious' review." *Tapley*, 728 F.3d at 1139. Under this approach, an "interpretation of Plan language is entitled to a high level of deference and will not be disturbed unless it is 'not grounded on any reasonable basis.'" *Id.* (quoting *Oster*, 869 F.2d at 1218). Further, Anthem's "interpretation need not be the one this court would have reached but only an interpretation which has rational justifications." *O'Rourke*, 934 F.3d at 1001 (internal quotation marks and citation omitted).

A plan administrator abuses its discretion if the plan administrator renders a decision without any explanation, improperly construes the terms of the ERISA plan, or relies on a clearly erroneous finding of fact. *See, e.g.*, *Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) (explaining that ERISA plan administrators abuse their discretion if they render decisions without any explanation, construe provisions of the plan in a way that conflicts with the plain language of the plan, or rely on clearly erroneous findings of fact). The nature of the Court's abuse-of-discretion analysis thus depends on the type of error that the plan administrator is alleged to have committed.

Natividad contends that Anthem "relie[d] on clearly erroneous findings of fact" when Anthem determined that the Facility Agreement's emergency services rate applied to Natividad's

16

1    trauma claims.  ECF No. 95 at 14.  The nature of Anthem's purported "finding of fact" that

2    Natividad challenges is unclear.  However, Natividad appears to contend that Anthem's

3    determination that the emergency services rate in the Facility Agreement applied to the Selected

4    Claims is itself a "clearly erroneous finding[] of fact."  *Id.* at 15.  If Natividad's framing of the

5    issue were correct, then in order to determine whether Anthem abused its discretion, the Court

6    would have to examine the record and determine whether the Court was "left with a definite and

7    firm conviction that a mistake has been committed," and the Court would be unable to "merely

8    substitute [its] view for that of the fact finder."  *Salomaa v. Honda Long Term Disability Plan*,

9    642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks and citation omitted).

10          However, Natividad's framing of the issue is not correct.  The interpretation of an

11    agreement allegedly incorporated by an ERISA plan is very different from the type of "findings of

12    fact" contemplated by the Ninth Circuit case law in the ERISA context.  Such findings of fact

13    include determinations of the cause of a claimant's disability, and whether a particular procedure

14    is medically necessary.  *See, e.g.*, *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*,

15    410 F.3d 1173, 1179 (9th Cir. 2005) ("To hold that the Board abused its discretion, we would have

16    to conclude that the entire record leads to a 'definite and firm conviction that a mistake has been

17    committed' by the Board in concluding that Boyd's disability did not arise from his football

18    career."); *Devers v. Carpenters Health and Welfare Trust Fund for Cal.*, No. 18-cv-04215-EMC,

19    2019 WL 3718596, at *8 (N.D. Cal. Aug. 7, 2019) ("Based on the record, the Trustees' finding

20    that Chemet was not a medical necessity was unreasonable whether under de novo or abuse of

21    discretion review.").

22          By contrast, here, Natividad merely challenges Anthem's *interpretation* of the terms of the

23    Facility Agreement as incorporated by the eight ERISA Plans.  Specifically, in the FAC, Natividad

24    alleges that Anthem violated ERISA because Anthem underpriced the instant claims in violation

25    of the terms of the Facility Agreement, which Natividad argues are incorporated in each of the

26    eight ERISA Plans.  *See* FAC ¶¶ 59, 76, 95, 111, 127, 135, 155, 172, 181.  Indeed, in Natividad's

28   Case No. 17-CV-04260-LHK
     ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
     MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

motion for summary judgment, Natividad points to specific provisions located within the eight relevant ERISA Plan summary plan descriptions, which Natividad argues entitle beneficiaries to payment for medical care at the reimbursement rate contemplated by the Facility Agreement.  *See* ECF No. 95-2 Ex. 52 at 2, 63; *id.* Ex. 53 at 1; *id.* Ex. 54 at 12; *id.* Ex. 55 at 12, 88–89; *id.* Ex. 57 at 27, 45, 50; ECF No. 95-3 Ex. 71 ¶¶ 3, 4, Ex. A. at 17, Ex. B at 24, 29; ECF No. 94-5 Ex. 56 at 1–2; ECF No. 94-6 Ex. 69 ¶ 3, Ex. A at 3, 5–7.

Natividad thus maintains that "each of the eight ERISA plans at issue provide that when a beneficiary receives covered treatment at a 'Participating Provider,' the amount the *ERISA plan* will pay for the treatment (i.e. the benefit under the plan) is determined according to the *contract between Natividad and Anthem*."  ECF No. 127 at 2 (emphasis added).  In other words, Natividad's theory is that "[a]ll the ERISA Plans provide that the benefits shall be the rate [sic] in the Facility Agreement."  *Id.* at 3; *see, e.g.*, *Lone Star OB/GYN Assocs. v. Aetna Health*, 579 F.3d 525, 530 (5th Cir. 2009) ("The ERISA plans state that Aetna will pay 'Recognized Charges,' and, under the definition of 'Recognized Charges,' state that where Aetna has an agreement with a health care provider, the 'Recognized Charge' is the rate established in that agreement.").

The Ninth Circuit has provided a framework for resolving abuse-of-discretion questions when a plan administrator interprets the terms of an agreement that is incorporated into an ERISA plan.  Specifically, in *Lehman v. Nelson*, 862 F.3d 1203 (9th Cir. 2017), the Ninth Circuit examined an ERISA plan that allegedly "incorporate[d] provisions from" another agreement into the plan.  *Id.* at 1207.  The Ninth Circuit deployed the abuse-of-discretion standard to examine the interplay between the ERISA plan and the agreement incorporated into that plan.  *Id.* at 1217–18.  In such a situation, the Ninth Circuit indicated that *Tapley*, 728 F.3d at 1140, provides the relevant criteria to determining whether the defendant abused its discretion in interpreting the contested terms.  862 F.3d at 1217.

*Tapley*, 728 F.3d 1134, in turn dictates that there are "three ways in which a Plan administrator's interpretation might" amount to abuse of discretion.  *O'Rourke*, 934 F.3d at 1001.

18

Case No. 17-CV-04260-LHK
ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
MOTION FOR SUMMARY JUDGMENT

1    "First, it is an abuse of discretion to 'construe provisions of a plan in a way that clearly conflicts

2    with the plain language of the Plan.'" *Id.* (quoting *Tapley*, 728 F.3d at 1140).  "Second, it is an

3    abuse of discretion to interpret a provision in a way that 'renders nugatory other provisions of the

4    Plan.'" *O'Rourke*, 934 F.3d at 1001 (quoting *Tapley*, 728 F.3d at 1140).  "Third, it is an abuse of

5    discretion to give an interpretation that 'lacks any rational nexus to the primary purpose of the

6    Plan.'" *O'Rourke*, 934 F.3d at 1001 (quoting *Tapley*, 728 F.3d at 1140).

7         The Court proceeds to apply this framework to Anthem's interpretation of the Facility

8    Agreement in the instant case, mindful that the abuse of discretion standard is inherently flexible

9    and "allows a court to tailor its review to all the circumstances before it." *Abatie v. Alta Health &*

10   *Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006).

           **b.  Application of Standard of Review to the Instant Case.**

11

12        In the instant case, Natividad argues that Anthem abused its discretion when Anthem

13   interpreted the Facility Agreement to apply the emergency services rate to the Selected Claims.

14   Indeed, Natividad argues that "at the time the[] claims were paid, there was no trauma rate in the

15   Facility Agreement."  ECF No. 95 at 15.  Anthem counters that Anthem reasonably understood the

16   Facility Agreement to dictate that "the emergency services rate applied to trauma services until the

17   parties reached an agreement on a new trauma rate," and that this interpretation did not amount to

18   abuse of discretion.  ECF No. 117 at 23.  The Court agrees with Anthem.  Anthem did not abuse

19   its discretion as plan administrator in interpreting the emergency services rate to apply to the

20   Selected Claims.

21        "Traditional summary judgment principles have limited application in ERISA cases

22   governed by the abuse of discretion standard." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d

23   917, 930 (9th Cir. 2012).  Hence, because the parties agree that abuse of discretion is the

24   appropriate standard for the Court to apply here, "the usual tests of summary judgment, such as

25   whether a genuine dispute of material fact exists, do not apply." *Id.* (internal quotation marks and

26   citation omitted).  Instead, the instant motions for summary judgment merely provide "the conduit

27

28   Case No. 17-CV-04260-LHK
     ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
     MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    to bring the legal question before the district court." *Nolan v. Heald College*, 551 F.3d 1148, 1154

2    (9th Cir. 2009) (internal quotation marks and citation omitted).  Natividad does not argue that any

3    conflict of interest or procedural irregularity on the part of Anthem must be factored into the

4    Court's abuse-of-discretion analysis.[2]  Accordingly, Anthem's interpretation of the Facility

5    Agreement is generally entitled to "broad deference."  *O'Rourke*, 934 F.3d at 998 (internal

6    quotation marks and citation omitted).

7         Nevertheless, the Court's review is not toothless.  The Court must still "closely read[]

8    contested terms" and analyze them under traditional contract principles in order to determine

9    whether Anthem's interpretation was reasonable.  *Tapley*, 728 F.3d at 1140.  As discussed in the

10   foregoing, under Ninth Circuit precedent, there are three ways in which a plan administrator's

11   interpretation of provisions of an ERISA plan may constitute an abuse of discretion.  "First, it is an

12   abuse of discretion to 'construe provisions of a plan in a way that clearly conflicts with the plain

13   language of the Plan.'"  *O'Rourke*, 934 F.3d at 1001 (quoting *Tapley*, 728 F.3d at 1140).  "Second,

14   it is an abuse of discretion to interpret a provision in a way that 'renders nugatory other provisions

15   of the Plan.'"  *O'Rourke*, 934 F.3d at 1001 (quoting *Tapley*, 728 F.3d at 1140).  "Third, it is an

16   abuse of discretion to give an interpretation that 'lacks any rational nexus to the primary purpose

17   of the Plan.'"  *O'Rourke*, 934 F.3d at 1001 (quoting *Tapley*, 728 F.3d at 1140).  The Court

18   considers these possibilities in turn, as applied to Anthem's reading of the Facility Agreement.

19        First, Natividad contends that Anthem's decision to reimburse the Selected Claims at the

20   emergency services rate clearly conflicted with the plain language of the Facility Agreement.

21   Specifically, Natividad argues that "[a] simple reading of the Facility Agreement reveals that it did

22   _____

23   [2] In its exhaustion of administrative remedies argument, Natividad generically asserts that Anthem
     failed to follow the requirements of 29 C.F.R. § 2560.503-1(g).  ECF No. 95 at 22.  Natividad

24   does not assert such a failure in its discussion of whether Anthem abused its discretion.  Moreover,
     these alleged failures were "minor irregularit[ies]" that do not affect the "broad deference" owed

25   to Anthem.  *Abatie*, 458 F.3d at 973 (explaining that "minor irregularit[ies]" do not affect "broad
     deference" owed to plan administrators).  This is particularly so in light of the fact that the record

26   demonstrates that Natividad was well aware of Anthem's interpretation of the Facility Agreement.
     *See* ECF No. 117-4 ("Demand for Arbitration") ¶ 9 ("Anthem is currently paying the emergency

27   rate for trauma claims . . . .").

                                                    20

28   Case No. 17-CV-04260-LHK
     ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
     MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    not contain a trauma rate." ECF No. 95 at 15. Not so. In the Facility Agreement, the "parties

2    acknowledge that currently Facility [*i.e.*, Natividad] is not certified to provide trauma services *and*

3    *that all such services are currently reimbursable under the emergency services rate*." ECF No.

4    94-8 Ex. 1 ("Facility Agreement") at Plan Compensation Schedule ¶ 10 (emphasis added). While

5    the Facility Agreement did not use the precise phrase "trauma rate" in the foregoing sentence, the

6    Facility Agreement does appear to contemplate that the emergency services rate would comprise

7    the rate at which trauma claims would be reimbursed until the parties agreed to another rate.

8    Further, the Facility Agreement specifically indicates that the "new trauma reimbursement rate

9    shall be applied prospectively. Facility [*i.e.*, Natividad] acknowledges that Anthem shall have no

10   obligation to retroactively adjust Claims notwithstanding that Facility [*i.e.*, Natividad] may have

11   had such trauma certification in place and able [sic] to perform trauma services prior to the

12   effective date of the new trauma reimbursement rate." *Id.* Thus, the Facility Agreement

13   specifically contemplates the possibility that Natividad would receive the trauma certification but

14   that some time would pass before the parties could agree to a "new trauma reimbursement rate."

15   This is of course precisely what occurred in the instant case.

16         In that event, between Natividad's receipt of the trauma certification and "the effective

17   date of the new trauma reimbursement rate," the plain language of the Facility Agreement

18   suggests the continued application of the emergency services rate. This is so because, by its plain

19   language, the Facility Agreement specifically indicates that "such new trauma reimbursement rate

20   will replace the emergency services rate for such trauma services." *Id.* The logical interpretation

21   of the foregoing language is that the emergency services rate constitutes the trauma reimbursement

22   rate until the time that the parties adopt a new trauma reimbursement rate, at which point the

23   emergency services rate would be "replace[d]." *Id.* There is no gap between the application of the

24   emergency services rate and the new trauma reimbursement rate. Thus, the plain language appears

25   to support Anthem's reading of the Facility Agreement: the emergency services rate applies to

26   trauma claims, like the Selected Claims, until a new rate is established.

27

28   Case No. 17-CV-04260-LHK
     ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
     MOTION FOR SUMMARY JUDGMENT

Second, Natividad does not point to any provisions of the Facility Agreement or the ERISA Plans that were rendered nugatory by Anthem's interpretation. By contrast, Natividad's interpretation of the Facility Agreement renders certain language nugatory. For instance, Natividad contends that the Facility Agreement only "stated that the parties would negotiate trauma rates after the hospital received its certification." ECF No. 95 at 15. If this interpretation is correct, then Natividad's reading appears to eliminate the Facility Agreement's statement that "all such services *are currently reimbursable under the emergency services rate*." Facility Agreement at Plan Compensation Schedule ¶ 10. Moreover, Natividad's claim that the Facility Agreement "did not contain a trauma rate" renders the Facility Agreement's repeated references to "a *new* trauma reimbursement rate" following Natividad's trauma certification confusing. *Id.* (emphasis added). If Natividad's interpretation were correct, there would have been no need for the Facility Agreement to use the "new" modifier to specify the trauma rate that the parties would eventually adopt following Natividad's trauma certification.

Third, and finally, Anthem's interpretation did not "lack any rational nexus to the primary purpose of" the ERISA Plans. *Tapley*, 728 F.3d at 1140. The ERISA Plans themselves only vaguely incorporate the reimbursement rates by reference. *See, e.g.*, ECF No. 95-2 Ex. 54 at 12 (Western Growers SPD dictating that "Covered Expense for a Participating Provider is based upon the Negotiated Contract Rate"). Thus, as Anthem notes, the question of the correct trauma reimbursement rate within the Facility Agreement mostly amounts to a "provider payment dispute" that arises almost entirely from the contractual relationship between *Anthem and Natividad*, not from the terms of the ERISA Plans themselves. ECF No. 117 at 12. Further, Anthem produced testimony from multiple witnesses associated with the ERISA Plans in which the witnesses could not identify any situations in which ERISA Plan beneficiaries would even be aware of the applicable reimbursement rates for providers, much less challenge them. *See* ECF No. 117-2 Ex. A ("King Depo.") at 72:9–11 (Q: "Is there a scenario where a member would appeal pricing?" A: "Not that I can think of."); *id.* Ex. B ("Chapman Depo.") at 50:14–15 ("[T]he

22

1    pricing of the claim is per the agreement between Anthem and the provider.").

2        "In sum, none of the three situations [the Ninth Circuit] identified in *Tapley* are present

3    here." *O'Rourke*, 934 F.3d at 1002.  Instead, the terms of the Facility Agreement are "ambiguous

4    and both sides present plausible interpretations of the [Facility Agreement] language." *Id.* at 999.

5    Accordingly, the Court concludes that Anthem did not abuse its discretion in interpreting the

6    Facility Agreement such that the emergency services rate applied to the Selected Claims.

7    "[W]here the party moving for summary judgment has had a full and fair opportunity to prove its

8    case, but has not succeeded in doing so, a court may enter summary judgment sua sponte for the

9    nonmoving party." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014).  Here, Natividad has had

10   a "full and fair opportunity" to prove that Anthem abused its discretion.  Further, whether Anthem

11   abused its discretion is a question of law that is suitable for the Court's resolution based on review

12   of the administrative record.  *See, e.g.*, *Mason v. Fed. Express Corp.*, 165 F. Supp. 3d 832, 857 (D.

13   Alaska 2016) ("In cases where the abuse of discretion standard applies, whether the administrator

14   abused its discretion is a question of law, not fact, based on a review of the administrative record,

15   as opposed to a trial.").

16        Accordingly, the Court GRANTS Anthem's motion for summary judgment with respect to

17   the Selected Claims on the basis that Anthem did not abuse its discretion in interpreting the

18   Facility Agreement.  The Court therefore does not reach Anthem's alternative arguments that

19   Anthem is not a proper defendant in the instant case.  Because the Court concludes that Anthem

20   did not abuse its discretion the Court must also DENY Natividad's motion for summary judgment

21   with respect to the Selected Claims.  *See, e.g.*, *Lisa O. v. Blue Cross of Idaho Health Serv. Inc.*,

22   No. 1:12–cv–00285–EJL–REB, 2015 WL 3439847, at *11 (D. Idaho May 28, 2015) ("[T]his

23   Court finds the Defendants did not abuse their discretion in denying the claim based on Exclusion

24   P.  For that reason, the Court will deny Plaintiffs' Motion for Summary Judgment and grant the

25   Defendants' Motion for Summary Judgment.").

26       **B.  Natividad's Motion to Strike Is Moot.**

27

28   Case No. 17-CV-04260-LHK
     ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
     MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1     On November 1, 2019, Natividad filed a motion to strike and exclude the "report, opinions,

2   declaration, and any other testimony" of Anthem's expert, Randall J. Moon.  *See* ECF No. 113 at

3   1.  As Natividad notes, "Anthem has designated Randall J. Moon as a purported expert to opine

4   that Anthem was neither a named fiduciary nor a '*de facto*' fiduciary in connection with its actions

5   in this case." *Id.*  This represents the sole subject of Randall J. Moon's expert report.  *See* ECF

6   No. 93-1.  However, the Court does not reach the issue of whether Anthem was a named or *de*

7   *facto* fiduciary in the instant case, nor does the instant Order rely on the testimony of Randall J.

8   Moon in any way.  Accordingly, the Court DENIES as moot Natividad's motion to strike the

9   testimony of Randall J. Moon.  *See, e.g.*, *In re Facebook Privacy Litig.*, No. 10-cv-02389-RMW,

10  2016 WL 4585817, at *1 (N.D. Cal. Sept. 2, 2016) ("As the court does not reach the parties'

11  arguments with respect to damages, Facebook's motion to strike the expert opinions of Forrest

12  Vickery is denied as moot.").

13  **IV.    CONCLUSION**

14     For the foregoing reasons, the Court GRANTS Anthem's motion for summary judgment.

15  The Court DENIES Natividad's motion for summary judgment.

16  **IT IS SO ORDERED.**

17

18  Dated: February 12, 2020

19                                                      _____

20                                                      LUCY H. KOH
                                                        United States District Judge
21

22

23

24

25

26

27                                          24

28  Case No. 17-CV-04260-LHK
    ORDER GRANTING ANTHEM'S MOTION FOR SUMMARY JUDGMENT AND DENYING NATIVIDAD'S
    MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California